1  Philip Christian Bikle

2  1616 South Varna Street

3  Anaheim, California [92804]

4  Phone: (301) 802-9953

5  Appellant in Pro Per

R E C E I V E D
MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

AUG 28 2014

FILED_____
DOCKETED_____
            DATE        INITIAL

6

7

8              UNITED STATES COURT OF APPEALS

9                  FOR THE NINTH CIRCUIT

10

11  Philip C. Bikle                        ) Case No. 14-55077

12          Plaintiff - Appellant,          ) D.C. No. 8:13-cv-01662-DOC-JPR

13  v.                                      )

14  Officer A. Santos, in his individual capacity;    ) Request for Judicial Notice

15  Officer Cathy Hayes, in her individual capacity;  ) pursuant to Federal Rules

16  Doe1-2, in individual capacities;        ) of Evidence (Rule 201(c)(2))

17  Los Angeles Sheriff's Department;        )

18  Los Angeles County;                      ) NOTICE #8

19  City of Lakewood in Los Angeles County;  )

20          Defendants                       )

21

**ORIGINAL**

1

To all parties, please be advised that plaintiff/appellant, Philip Christian Bikle, in Pro per, moves the court in the above entitled action to take judicial notice of the following California case law entitled, "Bacon Service Corporation v. Huss" (1926).

_____          8/25/14
Philip Christian Bikle                              Date

# CERTIFICATE OF SERVICE

Case Name: <u>Philip Bikle v. A. Santos, et al</u>

9th Cir. Case No.: <u>14-55077</u>

I certify that 2 copies of the document: <u>" Bacon Service Corporation v. Huss"</u>

(title of document you are filing)

and any attachments was served, either in person or by mail, on the persons listed below.

_____          _____
Signature                                             Date Served

Notary NOT required

<u>Name of party served</u>          <u>Address</u>

Officer A. Santos          Lakewood Station
                          5130 Clark Avenue, Lakewood, CA 90712

1

# CERTIFICATE OF SERVICE

Case Name: <u>Philip Bikle v. A. Santos, et al</u>

9th Cir. Case No.: <u>14-55077</u>


I certify that 2 copies of the document: <u>" Bacon Service Corporation v. Huss"</u>

(title of document you are filing)

and any attachments was served, either in person or by mail, on the persons listed below.


_____          _____

Signature                                                       8/25/14

Notary NOT required                                   Date Served

<u>Name of party served</u>                         <u>Address</u>

Officer Cathy Hayes                              Lakewood Station

                                                            5130 Clark Avenue, Lakewood, CA 90712

1

# CERTIFICATE OF SERVICE

Case Name: <u>Philip Bikle v. A. Santos, et al</u>

9th Cir. Case No.: <u>14-55077</u>

I certify that 2 copies of the document: <u>" Bacon Service Corporation v. Huss"</u>

(title of document you are filing)

and any attachments was served, either in person or by mail, on the persons listed below.

_____          _____
Signature                                                       Date Served

Notary NOT required

<u>Name of party served</u>                           <u>Address</u>

Los Angeles County                           Kenneth Hahn Hall of Administration
                                                          500 W. Temple St.
                                                          Los Angeles, CA 90012

# CERTIFICATE OF SERVICE

Case Name: <u>Philip Bikle v. A. Santos, et al</u>

9th Cir. Case No.: <u>14-55077</u>


I certify that 2 copies of the document: <u>" Bacon Service Corporation v. Huss"</u>

(title of document you are filing)

and any attachments was served, either in person or by mail, on the persons listed below.


_____          _____
Signature                                        8/25/14

                                                       Date Served

Notary NOT required

<u>Name of party served</u>                   <u>Address</u>

City of Lakewood in Los Angeles County     5050 Clark Avenue

                                                                 Lakewood, CA 90712

1

# CERTIFICATE OF SERVICE

Case Name: <u>Philip Bikle v. A. Santos, et al</u>

9th Cir. Case No.: <u>14-55077</u>

I certify that 2 copies of the document: <u>" Bacon Service Corporation v. Huss"</u>

(title of document you are filing)

and any attachments was served, either in person or by mail, on the persons listed below.

_____          _____
Signature                                          Date Served

Notary NOT required

<u>Name of party served</u>                <u>Address</u>

Los Angeles Sheriff's Department     John L. Scott, Sheriff
Los Angeles County Sheriff's Department
4700 Ramona Blvd.

Monterey Park, CA 91754

1



# State of California
## Secretary of State

I, DEBRA BOWEN, Secretary of State of the State of California, hereby certify: Selected Pages, California Supreme Court, Bacon Service Corporation vs. Huss, S.F. 11419, ca. 1926, (WPA #20603)

That the attached transcript of _____ 21 _____ page(s) is a full, true and correct copy of the original record in the custody of this office.



IN WITNESS WHEREOF, I execute this certificate and affix the Great Seal of the State of California this day of

May 23, 2014

**DEBRA BOWEN**
**Secretary of State**





                                    In Bank
Bacon Service Corporation,
          Plaintiff and Respondent,

          v.                                    S.F.No.11,419

Fred C. Huss, as Captain of the Fresno
County Traffic Squad,
          Defendant and Appellant.


          The plaintiff and respondent is a California corporation
having its principal place of business in the county of Fresno.  It
has been and is engaged in the business of transporting property for
hire as a private carrier and persons and property for hire as a
common carrier over the public highways of the state by means of
motor vehicles operated between fixed termini and over regular
routes.  The defendant and appellant is a law enforcement officer
of the state whose duties relate chiefly to the enforcement of laws
governing the use of the public highways by motor vehicles in Fresno
county.  In July, 1924, he was threatening criminal prosecutions
against the respondent for alleged violations of the provisions of
an act entitled "An act to impose a license fee for the transporta-
tion of persons or property for hire or compensation upon public
streets, roads and highways in the State of California by motor
vehicle; to provide for certain exemptions; to provide for the en-
forcement of the provisions hereof and for the disposition of the
amounts collected on account of such licenses;. . .", approved

-2-

June 13, 1923 (Stats. 1923, p. 706). This action was brought to
enjoin him from enforcing or attempting to enforce the provisions
of that act. The complaint set forth the foregoing facts and
charged that said act contravened certain provisions of the state
and federal constitutions and was therefore void.

The appellant answered admitting generally the allegations
of the complaint but denying specifically the alleged unconstitu-
tionality of the act. By stipulation the cause was submitted to
the trial court on the facts alleged in the complaint and on the
issues of law raised by the answer. The court found the allegations
of the complaint to be true, concluded that the act was void in its
entirety as in violation of both state and federal constitutions
and rendered judgment enjoining the defendant from enforcing the
same. The defendant appeals. The sole question for determination
is the alleged unconstitutionality of the statute.

As indicated by its title, the act was designed to impose
a license tax upon those engaged in the business of operating motor
vehicles upon the public highways for the transportation of persons
or property for compensation. Section 1 defines certain words and
phrases employed in the act. The term "operator" is declared gen-
erally to include all persons, firms, associations and corporations
who operate motor vehicles upon any public highway in the state and
thereby engage in the transportation of persons or property for
hire or compensation. The term "motor vehicles" is defined to mean
and include all vehicles, automobiles, trucks or trailers operated
upon or over the public highways of this state whether the same be
propelled or operated by steam or electricity or propelled or opera-
ted by combustion of gasoline, distillate or other volatile and in-
flamable liquid fuels. The term "gross receipts from operation" is
declared to include all receipts from the operation of any such
motor vehicle beginning and ending entirely within this state and
excluding revenues from interstate commerce.

-3-

Section 2 of the act provides: "Each operator of a motor
vehicle within this state who transports or desires to transport
for compensation or hire persons or property upon or over any public
highway within this state shall apply to and secure from the board
of equalization of the State of California a license to operate each
and all of the motor vehicles which such operator desires to operate
or which such operator from time to time may operate."

Under section 4 of the act the renewal of said license is
made conditional on the payment by the applicant of four per cent
of the "gross receipts from operation" ascertained as provided in
the act.  Said section further provides "that there shall be deduct-
ed from said four per cent of the gross receipts the amount of any
county or municipal licenes, and any city, or county, or city and
county taxes paid by such operators to any city, or county, or city
and county in this state upon any of the property actually used and
necessary in the operation of such motor vehicles for the transpor-
tation of persons or property and upon such payment said state con-
troller shall issue a receipt, in duplicate, to such applicant."

It is provided in section 7 that any operator using the
public highways of the state for the transportation of persons or
property for hire either as a public or private carrier without
first obtaining the license and making the return of gross receipts
provided for is guilty of a misdemeanor and is punishable by a fine
or imprisonment or both.  Section 8 provides that after the funds
are paid to the state they shall be apportioned one-half to the
state of California and one-half to its several counties as therein
provided, the whole to be used exclusively for the maintenance and
repair of the state and county highways.

The respondent concedes the right of the state to impose
a license for revenue on all persons operating motor vehicles for
hire on the public highways.  It makes no objection to fixing the
amount of such license tax at a percentage of the gross receipts

-4-

but it has refused to comply with the requirements of the law because
of its alleged invalidity resulting from certain exemptions included
in sections 1, 9 and 10 of the act.  Section 1 excludes from the de-
finition of the term "operator" every one "who solely transports by
motor vehicle persons to and from attendance upon any public school",
                              or to or from
and also every one "who solely transports his or its own property,
or employees, or both, and who transports no persons or property
for hire or compensation."  Section 9 reads as follows: "This act
shall not apply to taxicabs, drays, transfer vehicles and other like
city motor vehicles which do not run over regular routes nor shall
it apply to hotel buses meeting trains, cars or boats or to sight-
seeing motor vehicles," and section 10 provides: "Nothing in this
act shall be construed to apply to nor to levy a license upon the
operation of any motor vehicle or motor vehicles of any operator,
or the gross receipts therefrom, when as much as fifteen per cent
of the gross receipts of such operator in the aggregate from such
motor vehicle or motor vehicles shall have been earned by the trans-
portation of United States mails, parcels post or other government
matter under contract with the federal government."

        The respondent contends that the statute applies only to
some of those who operate motor vehicles for hire over the public
highways and in terms exempts others who stand in the same relation
to the burdens imposed as does the respondent; that no reasonable
distinction can be found to justify their preference and that the
act is therefore in violation of section 21 of article I of the
state constitution prohibiting the granting of privileges or immun-
ities to citizens or any class of citizens which upon the same terms
are not granted to all citizens; also in violation of section 11 of
article I requiring laws of a general nature to have a uniform opera-
tion; also in violation of section 12 of article XI which prohibits
the legislature from imposing taxes upon counties or the inhabitants
thereof for county purposes, and in violation of section 14 of arti-

-5-

XIII providing that all franchises other than those mentioned in
the section shall be assessed at their full cash value exclusively
for the benefit of the state.

On the former hearing the subject was treated particularly
with reference to the applicability of section 11 of article I of
the constitution. A rehearing was granted in order that more at-
tention might be given in the first instance to the effect of sec-
tion 21 of article I in the light of the provision of section 11 of
the act in question.

An examination of the entire statute discloses that the
obvious and only purpose of the act was to provide a revenue with
which to maintain and repair the public highways of the state out-
side of incorporated cities and that such revenue was to be obtained
by the imposition of a license or privilege tax on the business of
operating motor vehicles for hire over such public highways. The
act is not a police measure in any sense. It provides for a license
tax for revenue purposes only. As stated the respondent concedes
that this is a proper purpose to justify a license tax. It contends
however that if operators of motor vehicles for hire constitute a
proper classification to satisfy constitutional requirements, there
is no natural, intrinsic or constitutional distinction between the
use to which its motor vehicles are put and the use exercised by
certain of the exempted vehicles.

Taking up the exemptions in the order in which they appear
in the statute it is first noted that section 1 exempts operators
of motor vehicles used solely for the transportation of persons to
and from the public schools. In providing for this exemption the
legislature doubtless had in mind the motor vehicles operated by or
under contract with public school authorities for the conveyance of
school children to and from school. The expense of such operation
is a charge on the public treasury and the exaction of the license
tax thereon would naturally increase the general tax burden. The

-6-

state has a special interest in the development of the public school system and in as full and regular school attendance as possible. To that end such conveyances have been provided at public expense. It is easily conceivable that the legislature had in mind that by relieving such operators from a state license tax cheaper transportation for a public purpose would thereby be had.. An instance of a similar classification is noted in the exemption from the payment of registration fees under the California Vehicle Act of vehicles owned by the state or by any political subdivision thereof (sec. 78, Stats. 1923, p. 538). There would therefore seem to be no objection to the classification of motor vehicles so operated at public expense apart from those operated for hire by private individuals, associations and corporations.

The next exemption applies to those who use said public highways for the transportation of their own property or employees or both and to those who transport no persons or property for hire or compensation. It is obvious that those who operate motor vehicles for the transportation of persons or property for hire enjoy a different and more extensive use of the public highways. They are thereby enabled to engage in business on the public highways and to provide for themselves a livelihood particularly because of the existence of the public highways and the facilities thereby afforded. Such extraordinary use constitutes a natural distinction and a full justification for their separate classification and for relieving from the burden of the license tax those who merely employ the public highways for the transportation of their own property or employees.

The respondent next contends that the exemption of "taxicabs, drays, transfer vehicles, and other like city vehicles which do not run over regular routes" is such an exemption as disturbs the required uniformity of the act. It is apparent that this exemption and the further exemption of hotel buses meeting trains, cars or boats were intended to apply to those who are engaged in the business of opera-

-7-

ting such motor vehicles for hire within the limits of incorpora-
ted cities.  As such they may be properly so separately classified
for the reason that highways within municipalities are usually not
maintainable directly at the expense of the state but from munici-
pal revenues derived from the exercise of municipal powers of
license and taxation, and it must be assumed that the legislature
had this distinction in mind in limiting the license to the use of
highways maintainable by the state and for whose maintenance munici-
palities are not responsible.

In providing for the exemptions heretofore considered we
are of the opinion that the legislature has not acted arbitraily
nor without reason in making such classifications.  We do not in-
tend to hold however that the exemptions provided for in section
9 of the act would apply to operators therein mentioned who are
engaged also in the business of transporting passengers or proper-
ty for hire outside of incorporated cities as the fact in each case
may appear.

A different situation is presented as to the exemptions
next to be considered.  It is insisted by respondent and it is not
denied by the appellant that sight-seeing motor vehicles carrying
passengers for hire are quite generally operated in county terri-
tory outside of incorporated cities.  That being the fact it is
clear that the operators of such vehicles come within the definition of
those who are required to obtain licenses and to pay four per cent
of their gross receipts to the state under the general provisions
of the act.  There appears to be no natural or intrinsic and cer-
tainly no constitutional distinction between the use of the public
highways by the vehicles of the respondent and the same use by
sight-seeing buses regularly using the highways of the state out-
side of municipalities in the business of transporting persons or
property for hire.

Likewise it is insisted by the respondent that the exemp-

-8-

tion of operators who derive as much as fifteen per cent of their
gross receipts from United States mail contracts constitutes a
classification having no basis of distinction except the arbitrary
declaration of the statute itself.  It is difficult to perceive
how this exemption may be justified when it relieves from the bur-
den of the license tax those operators who conduct a motor bus
business outside of municipalities and who perchance may have ac-
quired a government contract for the carriage of mail from which
they derive at least fifteen per cent of their gross receipts.
Under this exemption the entire revenues of such operators derived
from business exclusive of mail contracts-and which may be as much
as eighty-five per cent of their gross receipts-are relieved from
the deduction of four per cent license tax while a like percentage
of the gross receipts of those operators of the same class having
no mail contracts are subjected to the tax.  We see no legally
justifiable basis for the distinction.  It will be noted that the
statute does not merely exempt the mail contract revenues from the
license tax of four per cent but exempts the entire revenues of
such operators from the requirements of the act.  We think that
the exemption of sight-seeing motor buses operating outside of
municipalities and the exemption of the entire revenues of opera-
tors a part but not all of whose business embraces the carriage
of United States mail and parcels post by contract were not based
on any properly cognizable theory of classification.  In further
considering these exemptions it would seem desirable and necessary
to view them first in the light of respondent's contention that
they are in violation of section 21 of article I of the constitution.
It is insisted that they confer special privileges and immunities
upon the operators there singled out which are not enjoyed by the
same classes covered by the general terms of the act.  It requires
no argument or citation of authority to demonstrate that the respon-
dent's position in this respect is well taken.  We feel no hesitancy

-9-

in holding that said exemptions attempt to confer special privileges
and immunities upon operators of such sight-seeing buses and mail
and parcels post contract carriers in violation of said section
21 and are therefore void.

It is then to be determined what effect the presence in
the act of those unlawful exemptions had on the balance of the act.
It is well settled that if the objectionable portions of an act are
so connected with the rest of the act as to be inseparable there-
from or to render the act inoperative as a complete legislative
enactment in the event the objectionable portions be excluded, the
entire act must fall.  It is also the rule that if the act, with
the objectionable portions excluded, be completely operative as a
legislative enactment and it is plain from the terms of the act that
the objectionable portions were not the considerations or conditions
which moved the legislature to enact the statute and that it was the
intention of the legislature to pass the act though the objection-
able portions were eliminated, then the balance of the statute may
be permitted to stand as a complete expression of the legislative
will.  The rule in such cases is expressed in Hale v. McGettigan,
114 Cal. 112, where it is said: "Whether a statute containing an
unconstitutional provision, with others which are constitutional,
will be sustained as to those which are constitutional and held
invalid merely as to those which are not, depends upon the nature
of the different provisions in view of the evident purpose of the
legislature.  If the provisions are so interdependent that those
which are invalid are to be regarded as the condition or consider-
ation upon which others were enacted, and it is evident that the
legislature would not have enacted the statute except in its en-
tirety, and did not intend that any part should have effect unless
the whole could be made operative, the entire statute must be held
invalid.  On the other hand, if the different parts of the statute
are severable and independent of each other, and the provisions

-10-

which are within the constitutional power of the legislature are
capable of being carried into effect after the void part has been
eliminated, and it is clear from the statute itself that it was the
intent of the legislature to enact these provisions irrespective of
the others, the unconstitutional provisions will be disregarded and
the statute read as if those provisions were not there.  For the pur-
pose of statutory construction, the intention of the legislature,
as shown by the general scope and purpose of the law, is to be as-
certained.  It is never to be assumed that the legislature intended
to enact an unconstitutional statute, or that it supposed that any
part of its act was beyond its constitutional power; and, if the
general scope of an act is within its power, the act is not to be
rendered null by reason of a subsidiary provision which was beyond
its power to enact.  If the manifest purpose of the legislature can
be carried into effect by upholding the act and disregarding such
subsidiary provisions, that purpose will not be defeated by an un-
constitutional provision contained in a subordinate section in the
act."  (See, also, People v. Capelli, 55 Cal. App. 461.)  It cannot
be questioned that the said unlawful exemptions are separable from
the balance of the act and when they are eliminated it is apparent
that the statute is a legislative enactment complete in all respects
and sufficient to accomplish the purposes for which it was adopted.
It remains only to consider whether it was the intention of the
legislature, gathered from the act itself, that the statute should
operate notwithstanding the unlawful exemptions in the event such
exemptions be stricken as constitutionally unauthorized.  The pro-
visions of section 11 of the act afford unmistakable evidence that
such was the legislative intent.  That sections reads as follows:
"If any section, subsection, clause, sentence or phrase of this act
is for any reason held to be unconstitutional such decision shall
not affect the validity of the remaining portions of this act.  The
legislature hereby declares that it would have passed this act,

-11-

and each section, subsection, sentence, clause or phrase thereof
irrespective of the fact that any one or more sections, subsections,
clauses or phrases be declared unconstitutional."

The purpose of that section was undoubtedly to meet such
a situation as is here presented.  It was inserted in the act for
the purpose of indicating to the court, when required to pass upon
the constitutionality of the act or of any portion thereof, and to
apply the rules of law applicable thereto, that the statute would
have been enacted with the objectionable portions omitted in the
event the court should conclude that said portions were separable
and beyond the power of the legislature lawfully to incorporate in
the statute.  It is conceded by the respondent that "without such
a declaration in the statute it would be the duty of this court,
if the act were in part constitutional and in part unconstitutional,
to sustain the constitutional part if the good and the bad were not
so blended that they could be separated and the constitutional part
could stand alone as a complete expression of the intention of the
legislature".  But it is insisted that section 11 is ineffectual
to accomplish the purpose contended for by the appellant.  It is
first pointed out that it is beyond the power of the legislature
to bind the court by the assertion that if any portion of the act
"is to be held unconstitutional, such decision shall not affect
the remaining portions" of the act.  To this contention we accede.
But we cannot view the language of the statute as an inexorable
command for it is a judicial question in each case whether the good
may stand notwithstanding the bad.  But the use of such language
may rightly be considered by the court as a declaration of inten-
tion on the part of the legislature that in so far as lay within its
power a separable invalid portion of the act should not detroy the
whole.

It is next contended that the second sentence of section
11 to the effect that the legislature would have passed the act and

-12-

each portion thereof "irrespective" of the fact that any portion
be declared unconstitutional is a challenge to the courts that the
legislature would have persisted in adopting an unconstitutional act,
including the invalid portions, notwithstanding certain parts of
the act be held unconstitutional.  To this we cannot agree.  The
second sentence is inaptly worded just as the first sentence is too
broad in its apparently mandatory phraseology.  But here again the
purpose of the language is plain.  It is an assurance to the court
that the legislature would have adopted the act with the invalid
portions excluded if it had known that the inclusion thereof was con-
stitutionally unauthorized, thus evidencing an intention which other-
wise might not have been apparent on the face of the act, and indi-
cating a purpose to avoid if possible a determination by the court
that it could not be said from the language of the act whether the
legislature would have enacted the statute with the invalid por-
tions excluded.  The section also makes it plain that if any exemp-
tions should be held invalid it was the intention of the legislature
that the operators whose exemption was attempted should be subjected
to the general requirements of the act.  A section similar to sec-
tion 11 was involved in the Motor Vehicle Act of 1913 and was given
its proper effect in the Matter of the Application of Schuler, 167
Cal. 282, where it was said: "Similar sections have been subjects
of interpretation in other states and it seems to be the consensus
of belief that they impose upon the courts the duty of supporting
the legislative will as far as possible" [Citing cases].  When the
invalid portions of the act here in question are excluded it is clear
that the balance of the act contains all of the elements of a com-
pletely operative statute and that it was intended by the legisla-
ture so to be.  The enactment then is in the same status it would
have assumed had the unlawful exemptions originally not have been
included therein.  In other words, their inclusion was a nullity and
the operators thus attempted to be exempted are included within the

-13-

general terms of the act and can claim no rights or privileges by
reason of the attempted exemption because, under the prohibitory
provisions of the constitution, they were never entitled to the
same. As so construed the statute is not then objectionable to
the provisions of section 11 of article I of the constitution re-
quiring uniformity. Nor does this conclusion result in judicial
legislation as urged by respondent. It is no more than the appli-
cation of approved rules of construction, having in mind that the
power of the court to declare a statute unconstitutional is one of
the utmost delicacy in its exercise and should not be asserted to
strike down the statute unless there is no proper basis for its
reconciliation with the organic law (S. & V. R. R. Co. v. City of
Stockton, 41 Cal. 147, 159; Matter of Application of Miller, 162
Cal. 687). Section 11 is not an attempted delegation of legislative
authority to the courts, nor is it an inconsistent alternative. It
is a positive declaration of the purpose of the legislature to
put the law in force to the full extent of the legislative consti-
tutional power (Snetzer v. Gregg, 129 Ark. 542, 196 S.W. 925; State
v. Clausen, 65 Wash. 156, 117 Pac. 701; Standard Lumber Co. v.
Pierce, 112 Ore. 314, 226 Pac. 812; 6 R.C.L. 123). It may be grant-
ed that if the problem here presented were approached solely from the
standpoint of the applicability of section 11 of article I and that
if there were no place in its proper solution for a consideration of
section 21 of the same article in connection with section 11 of the
act, then the conclusion might seem irresistible that the entire
statute would fall for lack of uniformity. But the latter conclu-
sion is properly made unnecessary by measuring the statute by other
constitutional tests which when properly applied permit the act in
general to stand.

The case of Mordecai v. Board of Supervisors, 183 Cal.
434, is strongly relied upon by the respondent. A careful consid-
eration of the decision in that case in the light of the terms of
the statute then before the court discloses that the conclusions

-14-

there reached are not controlling in the present case nor are they
inconsistent with the rules applied in this controversy. The
statute involved in that case provided generally for the creation
of irrigation districts in counties throughout the state and con-
ferred special powers upon the board of directors of such districts
over irrigation and other districts theretofore organized and ex-
isting in all counties pursuant to general state laws. The act then
provided that nothing therein contained should affect or apply to
any irrigation, protection, flood control, conservation or other
improvement district situated wholly or in part within any county
which had adopted a county charter prior to June 4, 1915, or within
any city and county, and that the board of directors provided for
in the act should have no power or jurisdiction within the excepted
counties or city and county. It was held that there was no natural,
intrinsic or constitutional distinction between districts in char-
tered or unchartered counties and that the act was therefore void
for lack of uniformity in its operation throughout the state. The
reasoning and conclusions of the court in that case when applied to
the particular act under consideration cannot be questioned but they
do not here apply for several reasons. In the first place, if the
act there involved were considered a burden imposed on the districts
included within its general terms and that special privileges and
immunities were granted to the districts in the excepted counties
the exceptions would be objectionable to section 21 of article I of
the constitution. But there was no language in the act such as was
incorporated in section 11 of the present act evidencing the intent
of the legislature that if the exceptions be held to be unconstitu-
tional the remainder of the act if possible should stand. Further-
more, there were in that case valid reasons for concluding that the
exceptions in the act were material considerations or conditions
attending the favorable vote on the entire measure in the legis-
lature and that without the exceptions the statute would not have

-15-

been adopted. Again, if the general terms of that act be deemed
the conferring of a privilege and the exceptions be deemed a denial
of the same privilege,, the general terms of the act would neces-
sarily fall as in contravention with section 21 of article I and
nothing would remain to operate as a legislative enactment.

Other cases cited by respondent do not warrant a different
conclusion. In Pasadena v. Stimson, 91 Cal. 238, the privileges
were conferred by the general terms of the act and the disabilities
or burdensome conditions were imposed upon the municipalities in-
cluded in the exception and the entire act was therefore properly
declared void. In the case of In re Raleigh, 177 Cal. 746, this
court had under consideration the real estate brokers' license law
of 1917. The act contained an exemption of those who had received
from the insurance commissioner or the bureau of building and loan
supervision a certificate of authority or license to do business
within this state. The exemption was held to be unlawful and the
entire act was declared to be invalid. There was nothing in the
statute in that case which indicated that if the attempted exemp-
tion were invalid and separable the balance of the act should stand
or that the legislature would have adopted the statute with the
invalid exemption omitted.

It is contended by respondent that Hill v. Wallace, 259
U. S. 44, is decisive of the present case. Its effect in that res-
pect might be conceded if it were here determined that the valid and
invalid portions of the act in question were inseparable. The
federal trade act of Congress approved August 24, 1921, under con-
sideration in that case, was found to contain regulations which were
unenforceable. The act also contained a section which was the same
in effect as section 11 of the present act. The court determined
that the invalid portions were so interwoven with the other regula-
tions contained in the act as to be impossible of separation and
to render the saving clause ineffectual. A similar saving clause
was considered in an Alabama case concerning which it was held that

-16-

"such an expression in an enactment serves only to render certain
the legislative intent with respect to passage of the valid parts,
                                                       the valid
notwithstanding the invalid, and does not avail to clothe with im-
munity from the invalidating effect the law because of the insep-
arable blending of the bad and good." (State v. Montgomery, 177
Ala. 212, 59 So. 294, 302.)  In Dorchy v. State of Kansas, 264
U. S. 286, it was said that such a saving clause was "not an in-
exorable command" to the court.  So here it is recognized that such
a clause cannot always save a statute.  In Connolly v. Union Sewer
Pipe Co., 184 U.S. 540, the anti-trust law of Illinois was under
consideration.  It provided that its terms should "not apply to
agricultural products or livestock while in the hands of the produ-
cer or raiser".  It was determined that those affected by the gener-
al terms of the act were denied the equal protection of the law and
the whole statute must fall for the reason "that the legislature
would not have entered upon or continued the policy indicated by the
statute unless agriculturists and livestock dealers were excluded
from its operation."  The effect of a saving clause was not there
involved.  In Spraigue v. Thompson, 118 U.S. 90, the court having
found certain provisions of a Georgia statute invalid, refused to
declare that the balance of the act should remain unaffected for
the reason "that by rejecting the exceptions intended by the legis-
lature of Georgia the statute is made to enact what confessedly the
legislature never meant."  It was held that such a construction
would confer "upon the statute a positive operation beyond the
legislative intent, and beyond what any one can say it would have
enacted in view of the illegality of the exceptions."  Likewise
in that case the effect of a saving clause was not before the court.
                                        Lewis'
          Respondent relies on a statement in Sutherland on Statu-
tory Construction (vol. 1, 2d ed., sec. 306) where it is said: "If,
by striking out a void exception, proviso or other restrictive
clause, the remainder, by reason of its generality, will have a
broader scope as to subject or territory, its operation is not in

-17-

accord with the legislative intent, and the whole would be affected and made void by the invalidity of such part". The foregoing is unquestionably the rule except when a contrary legislative intent or the general purposes or terms of the act is ascertainable from the language of the statute. But when it appears in the statute that it was the intent that the separable void portion should not destroy the whole, the invalidity of the entire statute will not necessarily result, especially when it is determined, as here, that such was the intent, and that the remainder is a full and complete legislative enactment of the subject to which it relates.

Numerous other cases cited and relied upon by respondent have been examined. In many of them we find a general recognition of the rules applied in the present case and we find none of them when properly considered compelling a conclusion contrary to that at which we have arrived.

Cases from other jurisdictions, cited by the appellant, declare the effectiveness of such a saving clause in proper cases. In N. R. Bagley Co. v. Cameron, 282 Pa. 84, 127 Atl. 311, it was held that a saving clause declaring statutory provisions separable is effective to raise a presumption of the intent to severally enact the remaining provisions of the act if any severable parts thereof be declared unconstitutional. In Saari v. Gleason, 126 Minn. 378, 148 N.W. 293, it was held that under such a saving clause the rule is that if a part of a statute be unconstitutional the remaining portions must nevertheless be sustained if enough is left to constitute an enforceable law. In Ohio Tax Cases, 232 U.S. 576, such a saving clause was given recognition. Further reference to this line of cases is deemed unnecessary, but for a general statement of the rule as applied in this state see 5 Cal. Jur. 643, 648, and supporting cases cited.

In section 8 of the act it is provided that all moneys collected under and by virtue of the act, except such sums as are re-

-18-

ceived for emblems, shall be paid into the state treasury and cred-
ited to the motor vehicle fuel fund.  This section then appropriates
one-half of said collections to the state to be devoted to the main-
tenance and repair of public highways.  The other one-half is ap-
portioned to the several counties of the state in accordance with
the plan therein provided and to be devoted exclusively to the main-
tenance and repair of public highways within the counties.  It is
contended by the respondent that section 12 of article XI is thereby
violated which provides among other things that the legislature
shall have no power to impose taxes upon counties or upon the inhab-
itants of any county for county purposes, but may by general law
vest in the authorities of the county the power to assess and col-
lect taxes for such purposes.  We find no merit in this contention.
The license taxes here imposed by the legislature are in furtherance
of a state purpose for the maintenance of state highways and to ex-
tend aid in the maintenance of county highways.  This action of the
legislature would seem to be fully authorized by section 26 of arti-
cle IV of the constitution which provides that "the legislature
shall have the power to establish a system of state highways, or to
declare any road a state highway, and to pass all laws necessary or
proper to construct and maintain the same, and to extend aid for the
construction and maintenance in whole or in part of any county high-
way."  (See, Buckingham v. Commary-Peterson Co., 39 Cal. App. 154,
167.)  The case of People v. Martin, 60 Cal. 153, and San Francisco
v. Insurance Co., 74 Cal. 116, relied upon by the respondent, are
not in point for the reason that the license taxes there involved
were required to be paid into the county treasuries and were imposed
and made available for expenditure for county purposes in the absence
of constitutional authority or a general law authorizing the county
authorities to impose the same.  But in any event the assignment of
a portion of the fund accumulated under the act here in question to
the several counties of the state would not destroy the effectiveness

-19-

of that portion of the act which requires the license tax to be paid
into the state treasury (Matter of the Application of Schuler, 167 Cal.
289).

There is no merit in the contention of the respondent that
the license tax here involved is a tax on its so-called franchise
or right to operate its motor vehicles under a certificate of pub-
lic convenience and necessity issued by the railroad commission, and
therefore void under section 14 of article XIII of the constitution.
That section provides that all franchises (such as the respondent
claims to own) shall be assessed at their actual cash value and be
taxed at the rate of one per cent each year exclusively for the pur-
poses of the state.  It is argued that inasmuch as section 8 of the
act in question provides that one-half of the license tax collected
shall be paid to the several counties the section of the constitu-
tion referred to has been violated.  The answer is that the tax on
the alleged franchise of the respondent as contemplated by the sec-
tion of the constitution referred to is a property tax on an ad
valorem basis and is not in any sense a license tax for the privi-
lege of carrying on a business such as the act here involved intend-
ed to impose.

We therefore conclude that when the separable and unlawful
exemptions are excluded from the act as being obnoxious to section
21 of article I of our state constitution the remainder of the act
is a completely enforceable statute as to all operators engaged in
the business of using the public highways of the state outside of
municipalities for the transportation of persons or property for
hire including those unlawfully exempted and that the remainder of
said act violates no provision of the state or federal constitutions
invoked by the respondent.

The act here under consideration was repealed by section
11 of a similar act approved May 23, 1925 (Stats. 1925, p. 833).
Inasmuch certain rights, duties and obligations of those operators
who were subject to the requirements of the 1923 statute and who

-20-

were doing business between the effective date of that act and the
effective date of the 1925 statute as well as the rights of the
state to revenues during that period still survive said repeal
the questions involved herein are not considered moot.

The judgment is reversed.

WE CONCUR:

*Shenk, J.*

*Seawell, J.*
*Curtis, J.*
*Richards, J.*
*Waste, C.J.*
*Langdon, J.*

No. ........................................

California

Supreme Court

Plaintiff and ........................................

vs.

Defendant and ........................................

OPINION