1  Philip Christian Bikle

2  1616 South Varna Street

3  Anaheim, California [92804]

4  Phone: (301) 802-9953

5  Appellant in Pro Per

6

7

8              UNITED STATES COURT OF APPEALS

9                 FOR THE NINTH CIRCUIT

10

11  Philip C. Bikle               ) Case No. 14-55077

12         Plaintiff - Appellant,   ) D.C. No. 8:13-cv-01662-DOC-JPR

13  v.                      )

14  Officer A. Santos, in his individual capacity;  ) Request for Judicial Notice

15  Officer Cathy Hayes, in her individual capacity;  ) pursuant to Federal Rules

16  Doe1-2, in individual capacities;  ) of Evidence (Rule 201(c)(2))

17  Los Angeles Sheriff's Department;  )

18  Los Angeles County;  ) NOTICE #11

19  City of Lakewood in Los Angeles County;  )

20          Defendants           )

21                             **ORIGINAL**

RECEIVED
MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

AUG 2 8 2014

FILED_____
DOCKETED_____
         DATE      INITIAL

1    To all parties, please be advised that plaintiff/appellant, Philip Christian

2    Bikle, in Pro per, moves the court in the above entitled action to take judicial

3    notice of the following California case law entitled, "Holmes v. Railroad

4    Commission of California" (1925).

5    _____          8/25/14

6    Philip Christian Bikle                              Date

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

# CERTIFICATE OF SERVICE

Case Name: <u>Philip Bikle v. A. Santos, et al</u>

9th Cir. Case No.: <u>14-55077</u>

I certify that 2 copies of the document: <u>" Holmes v. Railroad Commission of California"</u>

<div align="center">(title of document you are filing)</div>

and any attachments was served, either in person or by mail, on the persons listed below.

_____          8/25/14

Signature                                                Date Served

Notary NOT required

<u>Name of party served</u>                    <u>Address</u>

Officer A. Santos                              Lakewood Station
                                                        5130 Clark Avenue, Lakewood, CA 90712

1

## CERTIFICATE OF SERVICE

2

3   Case Name: Philip Bikle v. A. Santos, et al

4   9th Cir. Case No.: 14-55077

5

6   I certify that 2 copies of the document: " Holmes v. Railroad Commission of

    California"

7

                            (title of document you are filing)

8   and any attachments was served, either in person or by mail, on the persons listed

9   below.

10

11   _____          8/25/14

12   Signature                              Date Served

13   Notary NOT required

14   Name of party served                  Address

     Officer Cathy Hayes                    Lakewood Station
15
                                            5130 Clark Avenue, Lakewood, CA 90712

16

17

18

19

20

21

1

# CERTIFICATE OF SERVICE

Case Name: <u>Philip Bikle v. A. Santos, et al</u>

9th Cir. Case No.: <u>14-55077</u>

I certify that 2 copies of the document: <u>" Holmes v. Railroad Commission of California"</u>

<div align="center">(title of document you are filing)</div>

and any attachments was served, either in person or by mail, on the persons listed below.

_____          _____

Signature                                                      Date Served

Notary NOT required

<u>Name of party served</u>                      <u>Address</u>

Los Angeles County                          Kenneth Hahn Hall of Administration
                                                            500 W. Temple St.
                                                            Los Angeles, CA 90012

1

# CERTIFICATE OF SERVICE

Case Name: <u>Philip Bikle v. A. Santos, et al</u>

9th Cir. Case No.: <u>14-55077</u>

I certify that 2 copies of the document: <u>" Holmes v. Railroad Commission of California"</u>

<div align="center">(title of document you are filing)</div>

and any attachments was served, either in person or by mail, on the persons listed below.

_____          _____

Signature                                            Date Served

Notary NOT required

<u>Name of party served</u>                        <u>Address</u>

City of Lakewood in Los Angeles County        5050 Clark Avenue

                                                                  Lakewood, CA 90712

1

1

## CERTIFICATE OF SERVICE

2

3   Case Name: <u>Philip Bikle v. A. Santos, et al</u>

4   9th Cir. Case No.: <u>14-55077</u>

5

6   I certify that 2 copies of the document: <u>" Holmes v. Railroad Commission of</u>

   <u>California"</u>

7

   (title of document you are filing)

8   and any attachments was served, either in person or by mail, on the persons listed

9   below.

10

11   _____            _____

12   Signature                           Date Served

13   Notary NOT required

14   <u>Name of party served</u>              <u>Address</u>

15   Los Angeles Sheriff's Department    John L. Scott, Sheriff
                                       Los Angeles County Sheriff's Department
16                                      4700 Ramona Blvd.
                                       Monterey Park, CA 91754
17

18

19

20

21



# State of California
## Secretary of State

I, DEBRA BOWEN, Secretary of State of the State of California, hereby certify: Selected Pages, California Supreme Court, Holmes vs. Railroad Commission, S.F. 11467, ca. 1925, (WPA #22401)

That the attached transcript of _____ 22 _____ page(s) is a full, true and correct copy of the original record in the custody of this office.



**IN WITNESS WHEREOF**, I execute this certificate and affix the Great Seal of the State of California this day of

May 23, 2014

**DEBRA BOWEN**
**Secretary of State**

FILED

DEC 23 1925

D. GRANT TAYLOR, Clerk

By ........................ H. F. Deputy

Henry E. Holmes et al.,

      Petitioners,

        v.

Railroad Commission of the
State of California et al.,

      Respondents.

S.F. No. 11467.

Review to annul a decision and order of the respondent Railroad Commission. The decision sought to be reviewed was the outcome of a proceeding before the Commission wherein the respondents Highway Transport Company and S. B. McLenegan & Son, both "certificated" common carriers of freight by motor truck between San Francisco and San Jose and intermediate points, filed complaint alleging that the petitioners herein were operating motor trucks without having obtained a certificate of public convenience and necessity to do so for the transportation of freight for hire over the public highways between San Francisco and San Jose and intermediate points along and over the same routes and roads over which the complainants were operating; that such operations were in violation of law, were in direct competition with the complainants, and resulted in injury and damage to them. The defendants therein, petitioners here, filed an answer denying the allegations of the complaint and setting up as a separate defense that defendants were the owners of certain automobile trucks which they leased to a number of "selected" shippers of freight for use by said shippers in the distribution of merchandise between San Francisco and such points in San Mateo and Santa Clara counties as from time to time

2

served the convenience and necessity of said shippers. The ans-
wer further denied that the defendants were common carriers, that
they operated between fixed termini or over a regular route, that
they were operating in violation of law and that they were subject
to the jurisdiction of the Railroad Commission. Upon the issues
thus joined the Railroad Commission after due notice and after a
full and extended hearing rendered its decision and order now
before this court for review, wherein it was found that the de-
fendants, petitioners herein, were operating as a transportation
Company as that term is defined in section 1(c) of Chapter 213,
Statutes of 1917 as amended, and that they were engaged in the
operation of motor trucks over the public highways for compensa-
tion over a regular route and between fixed termini, namely,
"San Francisco to San Jose and intermediate points." The Com-
mission thereupon made its order directing the defendants to cease
and thereafter to desist from any and all such transportation unless
and until they should secure a certificate of public convenience
and necessity therefor. The defendants after the denial of their
petition for a rehearing of said order and decision instituted
the present proceeding in this court for a writ of review to annul
the same.

Petitioners were engaged in operating three motor trucks
in the transportation of merchandise consisting principally of
drugs, drug sundries and groceries from wholesale houses in San
Francisco to retail dealers in San Jose and at other points in
Santa Clara and San Mateo counties, which points, for the most
part, are intermediate points between San Francisco and San Jose.
Petitioners operated under separate contracts with the several
shippers, twenty-three in number, each contract being entered
into severally by petitioners as one party and by one of the ship-
pers as the other party thereto. These contracts were substantial-
ly alike in their terms (except as to minor variations not deemed

3

pertinent to the present inquiry.)  By each of these contracts
the petitioners purported to lease their trucks to the shipper
for use by the latter in transporting its merchandise
from San Francisco to points in Santa Clara and San Mateo counties
at an agreed rental of $19.50 per truck per day.  It is further
provided that if on any day only a portion of the capacity of any
truck is used for such transportation the rental shall be such
proportion of said rental of $19.50 as is represented by the ratio
which the capacity of the truck actually utilized in the trans-
portation of the lessee's merchandise bears to the total agreed
capacity of the truck, and, further, that the minimum rental in
connection with any transportation shall be based on one-thirtieth
of the capacity of the truck.  It is apparent from the other pro-
visions of these "leases" and from the manner in which they were
performed by the parties that they are nothing more than
contracts for the transportation of merchandise for compensation
at the rate of thirty-two and one-half cents per hundred pounds,
subject to a minimum charge of sixty-five cents per shipment.  The
Commission so found and its finding is abundantly supported, if
not compelled, by the evidence.  The Commission did not expressly
find upon the issue as to whether or not the petitioners were op-
erating as common carriers, which was alleged in the complaint and
denied in the answer.  The finding is that the petitioners "are
operating a transportation company as that term is defined in
section 1(c) of chapter 213 of the statutes of 1917 and amend-
ments thereto; that they are engaged in the operation of auto trucks
over the public highways for compensation, over a regular route and
between fixed termini, namely, San Francisco to San Jose and in-
termediate points, ....."  Petitioners contend that this finding
must be taken by us as a negative finding upon the allegation
that they were operating as common carriers and we are inclined to
agree with this contention.  The carrier respondents strongly in-

4

sist that under the rule which requires the construction of find-
ings so as to support the judgment we should construe this as a
finding that petitioners were in fact operating as common carriers
and that such finding is amply supported by the evidence herein.
It may be that the evidence herein would sustain such a finding if
it had been made by the Commission. As to that we express no opin-
ion. We are of the opinion that the present is not a proper case
for the application of the rule invoked by the carrier respondents.
A careful reading of the entire decision of the Commission, of
which the quoted finding forms but a part, makes it clear that the
Commission did not intend to find as a fact that petitioners were
operating as common carriers. On the contrary, the Commission took
the view that petitioners were subject to its jurisdiction under
the other facts and circumstances found herein, regardless of the
question whether they were operating as common carriers or as pri-
vate carriers, and in accordance with that view it deliberately
and intentionally omitted to find upon this question. If, there-
fore, we should conclude that the operation of petitioners as common
carriers is a fact essential to the jurisdiction of the Commission
over them it would be our duty to annul this decision and order.
This precise question was involved in the recent case of Frost v.
Railroad Commission (70 Cal. Dec. 457,        Pac.   ), which was
decided by us adversely to petitioners' contentions herein.  That
case must be regarded as controlling with respect to this phase of
the present inquiry, and the respective counsel for the petitioners
and for the Railroad Commission so concede.  Counsel for petitioners
argue most earnestly that our decision in the Frost case is erron-
eous and should be promptly overruled.  We have given careful con-
sideration to these arguments and are not disposed to depart from
our views as expressed in that case. The gist of our conclusion in
that case may be briefly stated as follows:  The legislature by
the 1919 amendment to the Auto Stage and Truck Transportation Act
plainly intended and attempted to extend the jurisdiction of the

-5-

Railroad Commission to private carriers when engaged in the business of transporation companies as there defined and to subject such private carriers to the burdens, obligations and limitations imposed by that act.  The question then is whether the state has the power to impose such burdens and **limitations** upon private carriers when using the public highways for the transaction of their business or whether its power in this behalf is limited in its application to public carriers. It is now universally recognized that the state does possess such power with respect to common carriers using thepublic highways for the transaction of their business in the transportation of persons or property for hire. That rule is stated as follows by the Supreme Court of the United States: "A citizen may have, under the fourteenth amendment, the right to travel and transport his property upon them (the public highways) by auto vehicle, but he has no right to make the highways his place of business by using them as a common carrier for hire.  Such use is a privilege which may be granted or withheld by the state in its discretion, without violating either the due process clause or the equal protection clause."(Buck v. Kuykendall, 45 Sup. Ct. Rep. 324. Italics added).  Petitioners emphasize the words which we have italicized and insist that this rule is limited in its application to common carriers. We think  it is equally applicable to all persons who seek to make a special and private use of the public highways by transacting their private business thereon and that it applies with equal force to private carriers who engage in the business of transportation for hire upon the public highways. The reason for the rule which authorizes the state to prohibit the private use of the highways by such carriers is not that they are common carriers. It is that they are making a private use of the public highways which are owned and paid for by the public and which are open alike to all persons.  It is true that common carriers are subject to regulation by the state because the fact that they are engaged in public service causes their business to be affected with public interest and thus justifies the regulation thereof by public

-6-

authority.  But this is not, as it seems to us, the reason for the existence of the rule above quoted.  The circumstance that they are public carriers would subject them to regulation but it would not subject their business to complete prohibition, it being a business which is not inherently unlawful or wrongful, but it is universally conceded that the state does have the power and the right to completely prohibit the use of its public highways by a common carrier. This must rest not upon the fact that he is a common carrier, but upon the fact that he is making a private use of the public highways. This conclusion is not based, as petitioners assert, upon the power of the state to regulate the use of its highways.  It is based upon the power of the state to prohibit the private use of its highways or in its discretion to grant the privilege of such private use upon such conditions as it may see fit to impose.  By the statute here in question the state says in effect to the citizen: "I will grant you the special privilege of using my highways for your private business upon condition that you in turn submit yourself and your property to such regulations as I impose.  I will not compel you to submit to these regulations but if you are not willing to do so, I shall not grant you this special privilege."  A conclusion somewhat analogous to this is presented in the case of Producers Transportation Company v. Railroad Commission (176 Cal. 499) relied upon by petitioners herein.  It was there held that a state has no power by mere legislative fiat, nor even by such fiat embodied in its constitution, to transmute a private carrier into a common carrier.  With that conclusion we are in entire accord, but it was also there held that if a private carrier exercises the right of eminent domain in aid of his transportation business, he will be deemed thereby to have dedicated his transportation system to a public use and to have thereby become a public carrier.  The circumstance that the right of eminent domain is a right of sovereignty which is inherent in the state does not seem to us of particular importance. The important fact, as it seems to us, is that the right of eminent domain is

-7-

not possessed by individuals as a matter of right. When the state offers to grant this right to an individual, it is as to him a special privilege. If the state offers this privilege to him upon expressed conditions, he will be deemed, if he exercises the right, to have accepted the offer and to have agreed to the conditions. He is under no compulsion to submit to the conditions. If he does not submit to the conditions he cannot exercise the privilege. If he does exercise the privilege he will be deemed to have voluntarily agreed to the conditions. Herein lies the distinction between the present case and the case of Michigan Public Utilities Comm. v. Duke(45 Sup. Ct. Rep. 191). Counsel for petitioners direct our attention to the fact that the reasoning adopted by us in the Frost case and adhered to herein was urged upon the Supreme Court of the United States in the Duke case and was by that court rejected. We agree that it was properly rejected in that case because it was not tenable under the facts of that case. It could not be said that by continuing in the transportation of property for hire after the enactment of the Michigan Public Utilities act Duke had voluntarily elected to dedicate his property to a public use because Duke had no opportunity for an election. He had no choice but to continue in the transportation of property after the enactment of the statute. He was under compulsion so to do because of his contracts which were in existence and subsisting at the time of its enactment. Therefore, to hold the statute applicable to him would be to say in effect that the state had the power to transmute him from a private carrier into a public carrier nolens volens and this we agree it could not do. This is what we had in mind when we said in this connection in the Frost case, "to give it effect in its application to his situation would have been to impair the obligation of those contracts." We intended thereby to point out that the only liberty of choice offered by the Michigan statute in its application to Duke was a Hobson's choice between dedicating his property to the public on the one hand and breaching his contracts on the other. We did not intend thereby to intimate

-8-

that the decision of the United States Supreme Court in the Duke
case was rested in part upon the impairment of the contracts provision
of the Federal constitution. It clearly was not. In the present case
the petitioners did not enter into the transportation business until
long after the enactment of the statute here in question. We find
here no such obstacle as there was in the Duke case in the way of
the conclusion that by so doing petitioners must be deemed to have
voluntarily elected to submit themselves to the conditions imposed by
the statute. We do not agree with petitioners that the Washington
decisions cited by us in the Frost case have all been overruled by
the later decision of that court in Davis v. Metcalf(229 Pac. 2).
They were not expressly overruled therein. On the contrary, they are
cited with apparent approval. It must be conceded, however, that the
implications of some of the language used in the opinion in that
case appear to be in conflict with our conclusions in the Frost case
and herein. That case, however, did not involve the question of the
power of the Railroad Commission to make an order in respect of a
private carrier such as is here under review. That case arose as a
suit in equity by a certificated carrier to procure an injunction
restraining an uncertificated carrier from transporting goods for
compensation over a regular route in competition with the plaintiff.
The trial court denied the injunction and the Supreme Court affirmed
the judgment. It does not necessarily follow from anything said or
decided in that case that if the Railroad Commission of that state had
after a hearing made an order requiring the defendant to desist from
further transportation over the highways until he obtained a certi-
ficate of public convenience and necessity, that such order would have
been annulled by the court. That question has not yet been litigated
in the State of Washington so far as we are advised. The recent Utah
case of State v. Nelson (     238 Pac. 237 .     ) is, we think, dis-
tinguished from the present case by the differences in the Utah stat-
ute. The grant of jurisdiction to the Commission in that statute is
"to supervise and regulate every public utility in this state as

-9-

defined in this title * * *." The term "public utility" is defined to include "every * * * automobile corporation * * * where the service is performed for or the commodity delivered to the public or any portion thereof." The term "common carrier" is defined to include "every * * * automobile corporation * * * operating for public service within this state; and every person or corporation * * * engaged in the transportation of persons or property for public service over regular routes between points within this state." (Italics added). The section of the Utah statute providing for the issuance of certificates of public convenience and necessity, while it does not expressly so provide, nevertheless indicates by clear implication the legislative intent that it shall be applicable only to public utilities as above defined. The Utah court held correctly, as we think, that the intent of the Utah statute was to limit the regulatory powers of the Railroad Commission to common carriers and other public utilities. Having reached this conclusion, the language in its opinion which is relied upon by petitioners herein must, as it seems to us, be regarded as obiter. We agree with petitioners that the case of Hissem v. Guran, 146 N.E. 808, is in conflict with our conclusion in the Frost case herein. It may be noted, however, that the reasoning which has impelled us to our conclusion does not appear to have been suggested to or at all considered by that court. We are disposed to adhere to that conclusion, notwithstanding the absence of any direct authority to support it.

If the foregoing conclusion is sound, it is, as it seems to us, a sufficient answer to all of petitioners' contentions based upon the guarantees of the Federal constitution, with the possible exception of the contention that the Auto Stage and Truck Transportation Act as amended and as construed by us denies to petitioners the equal protection of the law. Petitioners' first point under this contention is disposed of by our decision in the case of Franchise Motor Freight Assn. v. Seavey, 69 Cal. Dec. 473,     Pac.    . Petitioners seemingly take the position that there is no legitimate basis for a classification and distinction between private carriers engaged in the business of transporting freight over the public highways on the one

-10-

hand and private individuals engaged in other lines of business trans-
porting their own freight over the public highways as an incident to
such business on the other hand.   Petitioners propound the following
question: "What reasonable ground of distinction is there between a
private carrier engaged in the business of transporting his own freight
over the public highway between two points and another private carrier
who is engaged in the transportation of the same class of freight be-
tween the same points at the same time over the same highway, the only
distinction being that the freight transported by the latter belongs
to his neighbor or some other third party instead of to himself?"  The
facts assumed in this question are self contradictory.   One who trans-
ports merely his own freight over the highway is not a carrier, private
or otherwise. He may be a farmer or a manufacturer or a merchant or what
not, but the business in which he is engaged is not the busi-
ness of transportation.   He is not a carrier unless he engages in the
business of transportation of the persons or property of others for
compensation.   One who transports merely his own goods is of necessity
engaged in some business other than transportation and the transporta-
tion of such goods is no more than an incident to such business. So,
also, one who transports the goods of another as a servant or agent of
such other is not engaged in the business of transportation, but in so
doing is engaged in the business of his master or principal, whatever
that business may be.   But one who engages as an independent calling
in the transportation of goods for another or for others under con-
tract and for compensation is engaged in the business of transportation
and is a carrier.   The true question in this behalf is, therefore,
is there a natural or inherent basis for a classification and distinc-
tion between those who engage business of
in the transportation of the property of
others for compensation over the public highways, thus making a private
use of those highways, and those on the other hand who are engaged in
other lines of business and who use the highways in the transportation
of their goods merely as an incident to such business, for which pur-
pose the highways are open alike to all?  This question seems to us

-11-

to answer itself. It is too well settled to require citation of authority that a statute is not lacking in uniformity if it operates alike upon all those comprised within a class defined therein which is based upon some natural, inherent or constitutional ground of classification.

We find no merit in the suggestion that the act is unconstitutional in that it vests an arbitrary discretion in the Railroad Commission. The discretion of the Commission is not arbitrary but is controlled and guided by the relation of the facts found by it to the public convenience and necessity (Tarpey v. McClure, 190 Cal. 593, 600, and cases cited).

The final contention necessary to be considered herein is that the finding of the Commission to the effect that petitioners were operating between fixed termini and over a regular route is unsustained by the evidence. The statute defines the words "between fixed termini or over a regular route" to mean "the termini or route between or over which any corporation or person * * * usually or ordinarily operate any automobile, bus, auto truck, stage or auto stage, even though there may be departures from said termini or route, whether such departures be periodic or irregular." It also provides that this shall be a question of fact and that the finding of the Commission thereon shall be final and shall not be subject to review. We agree with petitioners that the finding is, however, subject to review, notwithstanding the last mentioned provision of the statute, for the reason that the fact in question is one which is essential to the jurisdiction of the Commission. Such review, however, cannot extend beyond the inquiry as to whether or not there is some substantial evidence to support the finding. If there is, the finding must be sustained, no matter how much evidence there may be in conflict therewith. In this connection it is to be noted, however, that it is not necessary that the evidence shall sustain both of the findings of the Commission, namely, that petitioners were operating between fixed termini and that they were operating over a regular route.

-12-

The statute is in the disjunctive and it is sufficient in this con-
nection to sustain the jurisdiction of the Commission if there was
substantial evidence to support either of these findings. The decision
of the Commission contains a fair resume of the evidence upon this
question and we quote therefrom as follows: "Defendants contend that
they are not operating between fixed termini nor over any regular
route, because they have had no depot at any point in San Mateo or
Santa Clara counties, nor have they a telephone at such points; that
deliveries are made either to store or sidewalk; that there is no
point in any city or town in San Mateo or Santa Clara counties which
constitutes a terminus, since the destination of trucks is determined
entirely by the load which the 'lessees' of the particular truck hap-
pen to offer for transportation on that particular trip; and that
there are no cities or towns in San Mateo or Santa Clara county to
which any trucks regularly go on all trips.

"It is true that each and every truck operated down the Penin-
sula by defendants does not stop for pick-up or delivery of merchan-
dise at each and every point along the highway, San Francisco to San
Jose, inclusive, and that on occasions the trucks have gone off the
highway for several miles to make deliveries to points such as the
County Poor Farm back of Belmont, Camp No. 4 on the Skyline Boule-
vard, Chadwick and Sykes Camp three miles east of Redwood City, etc.
The evidence, however, does show that there is only one main highway
known as the Peninsula Highway over which the trucks of the defend-
ants usually or ordinarily operate; that defendants' drivers are in-
structed during fair weather to use what is known as the Bay Shore
Highway out of San Francisco to its connection with the main Penin-
sula Highway at San Bruno and in rainy weather to use the Mission Road
through Colma to San Bruno.  From San Bruno there is but a single
route through Burlingame, San Mateo, Belmont, Redwood City, Menlo
Park, Palo Alto and other intermediate points, to San Jose. This main
State Highway is usually and ordinarily used with the exception
of the infrequent occasions upon which, as mentioned above a truck

-13-

carries merchandise destined to points somewhat off the highway.

"In connection with defendants' Exhibit No. 12, entitled 'Some Routes used by H. E. and P. W. Holmes,' P. W. Holmes testified that no two of such routes were alike. Route No. 3 names Redwood City only; No. 5 Burlingame-Redwood City; No. 12 Redwood City-Burlingame. These three routes, however, when taken in connection with San Francisco as a northern terminus, are identical in every respect. Transposing the names of communities does not differentiate as to route over which the trucks travel, but merely shows a difference in the routing of particular deliveries. In fact, this entire exhibit in the main substantiates the contention of complainants' that defendants' trucks do usually and ordinarily operate over a regular route or between fixed termini as represented by manifests therein named.

"Defendants further contend that they have no fixed termini due to the fact that the manifests submitted in the evidence covering the month of January, 1924, show a different southerly terminus on different trips. Analysis of this evidence shows that during the thirty day period above mentioned, San Jose or a point immediately adjacent to the city limits of San Jose, such as Alum Rock, Meridian Road, etc., appears as the most southerly terminus upon twenty occasions, the most southerly destination on other occasions being some point along what is known as the main Peninsula Highway, San Francisco to San Jose, such as Redwood City, which appears some seven times, or Palo Alto, which appears some five times.

"Certainly if a truck carries no merchandise for delivery upon a specified trip which would necessitate it going the entire length of its route and has no call for a pick-up on the northbound trip, it would in any case turn back after making its most southerly delivery, and if this Commission should hold that the law contemplated this class of operation as not being over a regular route no truck operator in the state could be held to fall within the provisions of the state regulation, due to the fact that one or more of his trucks on infrequent occasions might not cover the entire route usually or ordinarily served by him."

14

In addition to the foregoing it may be noted that at the hearing before the Commission petitioners introduced an exhibit consisting of a schedule showing the points of all deliveries made by them during the second week of each of the months of December, 1923, and January, February and March, 1924, in connection with which they produced testimony that the deliveries during those weeks were fairly typical of all of their operations.  The schedule shows all of the deliveries made by petitioners on twenty-three working days comprising those weeks and it appears therefrom that upon every one of those days petitioners made deliveries from San Francisco to San Jose and to intermediate points.  Under the statute it is immaterial that there were departures from the termini and from the route "whether such departures be periodic or irregular."  We are satisfied that the finding of the Commission is sustained by the evidence, and if it were conceded that the evidence would equally sustain a contrary finding that circumstance would be immaterial.

The decision and order of the Commission are affirmed and the writ discharged.

We concur:

*[signatures]*

I dissent. I cannot agree with the reasoning and conclusions of the prevailing opinion. It appears that the petitioners had applied to the commission for a certificate of public convenience and necessity. By that application they impliedly consented to subject themselves to the jurisdiction of the commission and to comply with the conditions which the law and the commission might impose. Included in those conditions under section 4 of the Auto Stage and Truck Transportation Act would be that the commission should have the power to fix their rates, regulate their service and in general provide that the applicant operate as a common carrier in the event that the certificate be issued. The application however was denied. Such action was within the power of the commission under section 7 of the act which provides that the commission may grant or deny such a certificate "with or without hearing." The petitioners established themselves as a private carrier. The respondent certificated carriers filed a complaint against them before the commission alleging that the petitioners were a transportation company as defined by the Auto Stage and Truck Transportation Act and as such were operating in direct competition with the complainants and were injuring and damaging their business. The petitioners were summoned before the commission and in an answer filed by them they denied that they were a transportation company as defined by the act. After notice and an extended hearing the commission found that the petitioners were a transportation company operating as a private carrier and issued an injunction directing them "to cease and hereafter to desist from any and all such transportation unless and until they have secured from this commission a certificate declaring that public convenience and necessity require the resumption or continuance thereof." The effect of the decision and order of the commission is to put the petitioners out of business, for it enjoins them from operating "unless and until" they obtain a certificate and on application the commission denies the certificate.

Under sections 22 and 23 of article XII of the constitution and the decisions of this court the commission has jurisdiction only

- 16 -

of the regulation and control of public utilities and matters which
are germane to such regulation and control. This is conceded in
the prevailing opinion but it is held, following the Frost case,
that the regulation of such a private carrier is so germane because
forsooth the private carrier is in competition with the public car-
rier. This conclusion in my opinion is not supported either by
reason or authority. If that conclusion be sound the result would
be that the commission may now require a truck owner, engaged ex-
clusively in the business of operating his truck for transportation
of freight on the public highways under contract with the sole owner
of a chain of stores, to apply for a certificate of public conven-
ience and necessity or go out of business and by denying his appli-
cation put him out of business. To pursue the subject still fur-
ther it would logically follow that the commission could be endowed
by the legislature under the present constitutional grant with the
power to say that no one may use the public highways for the trans-
portation of his own goods because by so doing he would take from
the certificated operator a revenue which the latter might other-
wise receive. By the same reasoning the legislature could vest
the commission with power to prohibit the use of private passenger
automobiles operating on the public highway because such use would
be in competition with regulated common carriers of passengers with
possible destruction of the business of the latter. Such a result
may not be contemplated as within the power of the state and more
particularly within the constitutional powers of the railroad com-
mission as defined and limited by this court.

     Nor is the action of the commission authorized by the
public utilities act or the Auto Stage and Truck Transportation Act.
The power of the commission to entertain complaints under the public
utilties act, under sections 60 and 61a, is with reference to "any
act or thing done or omitted to be done by any public utility."
Section 7 of the Auto Stage and Truck Transportation Act provides
that in all respects in which the railroad commission "has power
and authority under the constitution of this state or this act" com-

– 17 –

plaints may be filed with the commission and disposed of "in the manner, under the limitations and with the effect specified in the public utilties act." In Motor Transit Co. v. Railroad Commission, 189 Cal. 573, this court said at page 578: "By specific reference to the public utilities act the commission is given power to hear and determine complaints against transportation companies in exactly the same manner and to the same extent as it has of complaints against other public utilities. This power is conferred by section 7 of the 'Auto Stage and Truck Transportation Act,' . . . It obviously follows that sections 60 and 61 (a) of the public utilities act, as originally enacted and still in force, which prescribe the power of the commission to hear and determine complaints against public utilities make [mark] and measure the power of the commission to proceed in the instant case." Said section is not merely procedural. It vests power in the commission to entertain complaints and to take action thereon. The restrictions and limitations specified in the section are that, for the purpose of procedure, the terms of the public utilities act shall apply.

If the Auto Stage and Truck Transportation Act purports to vest in the commission jurisdiction over private carriers in my opinion it is to that extent contrary to the constitution. Such a conclusion would not deprive the commission of the power to entertain complaints against transportation companies which are common carriers in fact but are seeking to avoid the requirements of the act by masquerading as private carriers. If the petitioners had been found to be a common carrier in fact the commission would have had jurisdiction over them and could have properly exercised its authority in prohibiting their operations. But when the commission found the petitioners to be a private carrier, and it did so find, the juris-

- 18 -

diction of the commission over them was at an end. It seems to me that the prevailing opinion has misconceived the real purpose and object of the Auto Stage and Truck Transportation Act. The opinion fails to distinguish between regulation looking to safety and the conservation of the highways and the regulation of persons by whom the highways may be used. As to regulations concerning safety and the conservation of the highways they must be uniform and apply equally as between those similarly situated and may comprehend all uses both public and private. The Motor Vehicle Act is a familiar example of such regulation. But such an act necessarily prescribed a uniform course of conduct to which all must conform and when its requirements are met must be available to all. Use of the highways under such an act may be regulated but not prohibited, with certain exceptions not material here. Concerning the regulation of the persons who may use the public highways it is unquestionably true that the state may not only regulate but may prohibit the use thereof by persons, firms or corporations engaged in the business of a common carrier. It may grant the privilege to one carrier and deny it to another. It may regulate the charges and service of a common carrier and it may prevent other common carriers from competing with a privileged carrier. Such is the purpose of the Auto Stage and Truck Transportation Act. In other words, the purpose of the regulatory provision here in question is to prevent, in the public interest, ruinous competition as between concerns engaged in a like public business. With reference to a similar act in the state of Washington the supreme court of the United States in Buck v. Kuykendall, 267 U.S., said: "Its primary purpose is not regulation with a view to safety or to conservation of the highways, but the prohibition of competition. It determines not the manner of use but the persons by whom the highways may be used." In determining the persons by whom the highways may be used the state has no power in my judgment under the guise of prohibiting competition to deny to its citizens the right to use the public highways for their own private purposes whether for business or for pleasure. But assuming that it has that right and particularly the right to prohibit a private

- 19 -

business use of the highways as announced by the opinion it would
necessarily be true that such regulatory prohibitions must be uniform
and apply to all similarly situated and be enforced through the med-
ium of a state agency duly constituted for that purpose.  But in this
case a state agency whose judicial powers extend only to the regula-
tion and control of public utilities and matters properly germane
thereto proceeds to hale before it a concern using the highways for
its own private purposes, its private rights are adjudicated, it is
found to be engaged in a private business and it is put out of busi-
ness because forsooth its private business diminishes the revenues
of a certificated common carrier.  That the commission acted judi-
cially in determining after notice and hearing and on evidence the
status of the defendants before it and in issuing the injunction
cannot be denied.  That the commission may act judicially when legal-
ly authorized so to do is likewise beyond question.  Its authority
to act in that capacity however cannot be determined alone from a
consideration of the amendment to the statute in 1919.  Such a grant
of power must come from the constitution or from some act of the
legislature which is constitutionally authorized.  It is not con-
tended as indeed it may not be that the commission has direct grant
from the constitution to regulate private business.  True, this court
compelled the commission to assume jurisdiction of transportation
companies prior to any legislative enactment on the subject (Western
Association etc. R.R. v. Railroad Commission, 173 Cal. 802) but the
transportation companies before the commission in the proceeding in-
volved in that case and over which the commission was required to
take jurisdiction were admittedly common carriers and as such public
utilities within the definition of section 23, article XII, of the
constitution.  The whole purpose of that section and of the preceding
section 22 in re-establishing the railroad commission and endowing
it with extensive powers was to regulate and control public utilities
privately owned (City of Pasadena v. Railroad Commission, 183 Cal.
526, 534) and it is settled by the decisions of this court beyond
question that such additional powers as the legislature may confer

- 20 -

upon the commission must be "germane to the subject of regulation
and control of public utilities" (Pacific T. & T. Co. v. Eshelman,
166 Cal. 640; City of Pasadena v. Railroad Comm., supra; Motor Transit
Co. v. Railroad Comm., 189 Cal. 573). The commission recognizes that
such is the rule but says "that the regulation of the type of car-
riage here in question is, because of its power to destroy regulated
carriage, most cognate and germane to the subject of the regulation
and control of public utilities [carriers]." I deny that the com-
mission has power to suppress and destroy a private business because
such private business may be in competition with the business of the
common carrier. This is, indeed, a curious but nevertheless an ef-
fective method of taking private property for public use without com-
pensation. Furthermore, if the question of competition be the test
and the elimination of competition be germane to the subject of regu-
lation and control of the public utility it is difficult to conceive
why it is necessary to consider the use of the public highways in
connection with such competition for if the power to suppress com-
petition be possessed by the commission it may be exercised against
the outlawed competitor whether he operate on the public highways
or elsewhere. If the suppression of competition alone does not make
such regulation germane to the subject of regulation and control of
public utilities then it cannot be made so germane under the guise
of regulating the use of the public highways. We are here dealing
with public and private concerns which use the public highways in
their private business but the fact that they are so using them in
so far as competition is concerned is a mere circumstance.

The prevailing opinion concedes that the conclusions reached
are without direct precedent. By reference to the laws and decisions
of other states it is found that Michigan, Ohio, Utah and Washington
have statutes similar to our auto stage and truck transportation act.
The courts of last resort of those states in construing their statu-
tory provisions have uniformly reached a conclusion opposed to the
prevailing opinion (Hissem v. Guran and Meyers (Ohio), 146 N.E. 808;
Davis v. Metcalf, 131 Wash. 141, 229 Pac. 2; State v. Nelson (Utah),
& Banker,

238 Pac. 237.)  The declaration of the supreme court of the United States in Michigan Public Utilities Commission v. Duke, 266 U.S. 570, is directly in point.  In that case Duke had employed 75 men and 47 motortrucks as a private carrier under three private contracts for the transportation of automobile bodies from Detroit to Toledo. Under the public utilities act of Michigan which concededly is essentially similar to our own auto stage and truck transportation act it was sought to subject Duke to regulation as a common carrier. The court said: "Moreover, it is beyond the power of the state by legislative fiat to convert property used exclusively in the business of a private carrier into a public utility, or to make the owner a public carrier, for that would be taking private property for public use without just compensation, which no state can do consistently with the due process clause of the fourteenth amendment. (Producers Transportation Co. v. Railroad Commission, 251 U. S. 228, 230; Wolff Co. v. Industrial Court, 262 U. S. 522, 536.) On the facts above referred to, it is clear that, if enforced against him, the act would deprive plaintiff of his property in violation of that clause of the constitution."  The prevailing opinion attempts to distinguish that case from the one at bar on the ground that Duke's contracts were outstanding at the time the Michigan statute took effect and for that reason the statute was not applicable to him.  The supreme court of the United States did not base its decision on the impairment of contract clause but on the fourteenth amendment.  Such in my opinion should be the conclusion reached in this case, that is to say, it should be decided that the petitioners by reason of the act of the commission have been deprived of their property without due process of law, have been denied the equal protection of the law and their private property has been taken for public use without just or any compensation.  The order of the railroad commission should be annulled.

*Shenk, J.*

No. 

California
Supreme Court

Plaintiff and

vs.

Defendant and

OPINION

