1  Philip Christian Bikle

2  1616 South Varna Street

3  Anaheim, California [92804]

4  Phone: (301) 802-9953

5  Appellant in Pro Per

R E C E I V E D
MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

AUG 2 9 2014

FILED _____
DOCKETED _____ DATE _____ INITIAL

6

7

8  UNITED STATES COURT OF APPEALS

9  FOR THE NINTH CIRCUIT

10

11  Philip C. Bikle                    ) Case No. 14-55077

12           Plaintiff - Appellant,    ) D.C. No. 8:13-cv-01662-DOC-JPR

13  v.                                  )

14  Officer A. Santos, in his individual capacity;    ) APPEAL

15  Officer Cathy Hayes, in her individual capacity;   ) APPELLANT'S BRIEF

16  Doe1-2, in individual capacities;    )

17  Los Angeles Sheriff's Department;    )

18  Los Angeles County;                  )

19  City of Lakewood in Los Angeles County;  )

20  _____Defendants_____)   **ORIGINAL**

21

1

# TABLE OF CONTENTS

STATEMENT OF THE CASE...................................................................7

Nature of the Proceeding..................................................................7

Notice of Appeal...............................................................................7

Jurisdiction.......................................................................................7

Nature of the Judgment.................................................................7-8

Questions Presented.....................................................................8-10

Summary of Argument.................................................................11-13

Summary of Facts........................................................................13-14

ASSIGNMENT OF ERROR.........................................................14-16

Argument......................................................................................16-45

    I. Statutory and State Constitutional Analysis........................17-43

    II. Federal Law Analysis .......................................................43-45

CONCLUSION.....................................................................................46

ADDENDUM....................................................................................47-50

## CONSTITUTIONAL PROVISIONS AND STATUTES

United States Constitution, Amendment IV .......................................47

United States Constitution, Amendment V ........................................47

United States Constitution, Amendment XIV .................................47-48

## CALIFORNIA CONSTITUTIONAL PROVISIONS AND STATUTES

1

California Constitution, Preamble................................................................48

California Constitution, article I, section 1................................................48

California Constitution, article I, section 3(b)(2)......................................48

California Constitution, article I, section 26.............................................48

California Constitution, article VI, section 17.....................................48-49

Statutes, 1905, Chapter 612 (DCXII)...................................................17-18

Statutes, 1913, Chapter 326..........................................................................17

Statutes, 1925, Chapter 412..........................................................................21

Statutes, 1937, Chapter 679..........................................................................25

Statutes, 1941, Chapter 39............................................................................26

Statutes, 1957, Chapter 482..........................................................................28

Statutes, 1959, Chapter 3......................................................................28, 33

Statutes, 1961, Chapter 1615........................................................................30

Statutes, 1963, Chapter 74............................................................................32

Statutes, 1971, Chapter 213..........................................................................32

Statutes, 1984, Chapter 621..........................................................................33

Statutes, 1990, Chapter 1359........................................................................33

Statutes, 1993, Chapter 272..........................................................................33

Statutes, 1993, Chapter 1292........................................................................34

Statutes, 1996, Chapter 10............................................................................35

Statutes, 2003, Chapter 222..........................................................................35

Statutes, 2004, Chapter 755.................................................................36

Statutes, 2007, Chapter 630.................................................................37

California Vehicle Code § 310................................11, 16, 28, 30, 32, 33, 43, 45, 49

California Vehicle Code § 12500.......9, 10, 11, 13, 15, 16, 28-37, 39, 40, 43, 45, 49


Certificate of Compliance with type-volume limitation, typeface requirements,

     and type style requirements.............................................Attachment

APPENDIX

Dismissal Order.............................................................Attachment

# TABLE OF AUTHORITIES

## <u>CASES</u>

Bacon Service Corporation v. Huss, 199 Cal. 21, 248 P. 235.

    (Supreme Court of California, 1926)......................................................23, 25

Beamon v. Department of Motor Vehicles, 180 Cal.App.2d 200,

    4 Cal.Rptr. 396. (1960).........................................................................30

Bordenkircher v. Hayes, 434 U.S. 357, 363 (1978)...........................................43

Buck v. Kuykendall, 267 U.S. 307 (1925)............................................12, 16, 23, 43

Buelke v. Levenstadt, 190 Cal. 684, 214 P. 42.

    (Supreme Court of California, 1923)......................................................20, 29

Chapman v. Aggeler, 47 Cal. App. 2d. 848, 119 P.2d 204. (1941).........................36

Common Cause v. Board of Supervisors, 49 Cal.3d 432,

    261 Cal.Rptr. 574; 777 P.2d 610 (1989)...................................................37

Connally v. General Construction Co., 269 U.S. 385 (1926)................................44

Ex parte Schmolke, 199 Cal. 42, 248 P. 244.

    (Supreme Court of California, 1926)......................................................25

Grayned v. City of Rockford, 408 U.S. 104 (1972).........................................44

Holmes v. Railroad Commission of California et al., 197 Cal. 627,

    242 P. 486. (Supreme Court of California, 1925).......................................23

In the Matter of Application of Stork, 167 Cal. 294, 295-296, 139 P. 684.

    (Supreme Court of California, 1914).................................................18-20, 29

Jackson v. San Diego,  121 Cal. App. 3d. 579, 587,

    175 Cal. Rptr. 395. (1981)...............................................................38

Ma'at-Ra v. Bateman, 234 F. App'x 514 (9th Cir. 2007)..............................8, 14, 38

Olajide v. California Deparment of Motor Vehicles, No. A133375,

    (Cal. Ct. App. Mar. 16, 2012)..........................................................8, 14, 38

People v. McKay, 27 Cal.4th 601, 607 (2002)..........................................................14

Rosenfield v. Superior Court, 143 Cal.App.3d 198, 202 (1983).............................37

Santa Cruz Rock Pavement Co. v. Heaton, 105 Cal. 162, 165

    [38 P. 693]  (1894)............................................................................37

Urban Renewal Agency v. California Coastal Zone Conservation Comm.,

    15 Cal. 3d. 577, 125 Cal. Rptr. 485, 542 P.2d. 645. (1975).........................36

**APPELLANT'S BRIEF**

# STATEMENT OF THE CASE

## Jurisdiction

Bikle brought this action before the United States District Court pursuant to 42 U.S.C. §1983, §1985(3), §1986 and the Fourth, Fifth and Fourteenth Amendments to the United States Constitution and this jurisdiction is founded upon 28 U.S.C. §1331 and §1343(a) (3) and (4).

Jurisdiction of this Court of Appeals is invoked under Section 1291, Title 28, United States Code, as an appeal from a final judgment of dismissal with prejudice, on December 13, 2013, in the United States District Court for the Central District Court of California, in Santa Ana. Notice of appeal was timely filed, on January 10, 2014, in accordance with Rule 4(a)(1)(A) of the Federal Rules of Appellate Procedure (F.R.A.P.).

## Nature of the Proceeding

This is a civil case in which the Appellant, Philip Christian Bikle, appeals the judgement of dismissal with prejudice entered pursuant to Federal Rule of Civil Procedure 12(b) (1).

A copy of the complaint was provided to the District Clerk in order to allow compliance with F.R.A.P. (11)(b)(2).

## Nature of the Judgment

The trial court found that Bikle's complaint against Defendants failed to state a claim upon which relief may be granted and that it was frivolous. The trial

court alleges that all of Bikle's claims, "...stem from the underlying premise that because he does not use his vehicle for commercial purposes, he is not required to have a driver's license." The trial court alleges that a nearly identical §1983 claim was rejected as frivolous by the Ninth Circuit. The trial court relies upon the Ma'at-Ra v. Bateman, 234 F. App'x 514 (9th Cir. 2007) case and the California Court of Appeals case Olajide v. California. Department of Motor Vehicles, No. A133375, 2012 WL 893879 (Cal. Ct. App. Mar. 16, 2012) for dismissal. Bikle's charges of conspiracy to deprive Bikle of his due process rights, Fifth Amendment claims, Ninth Amendment claims and state-law tort claims under supplemental jurisdiction were dismissed.

A copy of the order dismissing the complaint with prejudice is attached at the end of this brief.

## Questions Presented

1)    Has the Legislature of the State of California made a classification whereby all chauffeurs or drivers of motor vehicles for hire are required to pay a license, while all other drivers of vehicles are classed as 'operators,' and are not required to secure a license or pay a license fee?

2)    Has the Legislature of the State of California provided exemptions from the requirement to obtain a driver's license, which includes a chauffeur's or an operator's license, for those persons who use an

8

automobile upon the highways but who do not transport persons or property for hire?

3) Assuming (1) or (2) are answered in the affirmative, does the division by the Legislature of drivers of motor vehicles into the two classes described, and the exaction of a license fee from the one and not from the other, indicate that California Vehicle Code section 12500(a) applies to the class of persons who use their automobile on the highways but who are not chauffeurs or operators of motor vehicles for hire?

4) Assuming (3) is answered in the negative, can a member of the class of persons who use their automobile on the highways but who are not chauffeurs or operators of motor vehicles for hire be arrested for violating California Vehicle Code 12500(a)?

5) Does a member of the class of persons who use their automobile on the highways but who are not chauffeurs or operators of motor vehicles for hire have to provide a peace officer with a driver's license upon demand?

6) Assuming (5) is answered in the affirmative, is a United States Passport sufficient for identification purposes in place of a driver's license?

7)    Assuming (6) is answered in the affirmative, does a person have to provide a thumbprint after providing a U.S. Passport for identification?

8)    If a member of the class of persons who use their automobile on the highways but who are not chauffeurs or operators of motor vehicles for hire does not provide a driver's license to an officer upon demand, is that probable cause to run background checks on the person's automobile?

a)    Is the term "may", in the California Vehicle Code (CVC) 12500 (a) permissive?

b)    Assuming (a) is answered in the affirmative, can penalties be enforced against a person for allegedly violating CVC 12500 (a)?

c)    Assuming (2) is answered in the negative, does a peace officer have the authority to initiate a seizure of a person who is alleged to have violated said statutory section?

d)    Assuming (2) is answered in the negative, does a peace officer have the authority to initiate a search of a person's absolutely owned property on the grounds that said person allegedly violated said statutory section?

**Summary of Argument**

The District Court misinterpreted the law pertaining to driver's licenses in the State of California. It further applied the incorrect law to Bikle. The cases that the District Court relied upon also misinterpreted the Legislative Acts regarding driver's licenses. The misinterpretation, by California State Courts, may have been a result of the vague and over-broad language of the California Vehicle Code §310 and §12500, or it may have been the result of a biased judiciary, influenced by the fines and fees from traffic tickets which get laundered through local County General Funds before portions are extracted and placed into the Judges Retirement Funds I & II in spite of a California Constitutional prohibition on Judges receiving portions of fines and fees. See California Constitution Article 6 Section 17.

Officer Santos unlawfully detained Bikle. Furthermore he searched Bikle's absolutely owned, personal property with out probable cause. Officer Santos and Officer Hayes along with their employing agencies Los Angeles Sheriff's Department, Los Angeles County, and the City of Lakewood in Los Angeles County have engaged in a criminal conspiracy to convert Bikle's lawful right to travel via automobile, with out obtaining a driver's license, into the privileged, and licensed, activities of a "chauffeur" and/or an "operator". The California Legislature created exemptions from licensing requirements for individuals who do not fit the description of a "chauffeur" or an "operator" as these terms have been defined **repeatedly** by the Legislature in the acts which create the laws relating to the chauffeur's licenses and operator's licenses, which are conjointly known as the "driver's license".

1    The aforementioned officers conspired to extract money from Bikle by

2    using the United States Postal Service fraudulently, to convey that criminal

3    prosecution had been initiated and that a criminal case had been opened against

4    Bikle, when in reality there had been no initiation of prosecution by a prosecuting

5    attorney, who is the only lawfully vested person responsible for initiating a

6    criminal prosecution. This constituted fraud and a conspiracy as per §1985(3).

7    Bikle is a member of the class of persons who utilize the public right-of-way and

8    who are not obligated to obtain a driver's license, as can clearly be seen by careful

9    examination of the California Legislative Acts and California Supreme Court

10    decisions pertaining to the subject. Bikle had the rights to: travel via automobile

11    and to due process pursuant to the 14th amendment. Peace officers are not

12    authorized in California to initiate a criminal prosecution. In attempting to do so,

13    and by conveying that such criminal prosecution was initiated, the officers

14    conspired against Bikle and violated the aforementioned rights.

15    Bikle should be allowed to amend his complaint such that all due process

16    violation claims under the Fifth amendment are properly claimed under the 14th

17    amendment, which applies to State actors.

18    Bikle should be allowed to amend his complaint such that all right to travel

19    via automobile claims are properly brought under the 14th amendment. See Buck

20    v. Kuykendall, 267 U. S. 307, 45 S. Ct. 324, 69 L. Ed. 623, 38 A. L. R. 286.

21

Bikle should be allowed to pursue his state-tort claims pursuant to Federal Court supplemental jurisdiction. Bikle does not expect to have an impartial venue in the State arena given the potential Judicial biases presented in this appeal.

The District Court dismissed Bikle's complaint on errors. The dismissal with prejudice should be vacated and the case should be remanded to continue where it left off.

## Summary of Facts

The following is a subset of the alleged facts from the original complaint. Bikle requests that **all** of the alleged facts be taken into consideration with this appeal; however, this subset summarizes the core issues on appeal, to wit:

Bikle was arrested and issued a citation, by Officer A. Santos, for allegedly violating California Vehicle Code 12500(a) and 16028(c), no driver's license and no insurance, respectively. Bikle informed the Officer that he was not engaged in the business of transportation, that is, transporting persons or property for hire. Bikle informed the Officer that the California Statutes only required those engaged in aforementioned activities to hold a driver's license and insurance. The Officer listened but ignored these facts.

When prompted for identification, Bikle provided the Officer with a United States Passport, which should have been sufficient for identification purposes. See

People v. McKay, 27 Cal.4th 601, 607 (2002). Officer Santos demanded a thumbprint from Bikle, who complied under duress.

Officer Santos also searched, without probable cause, Bikle's absolutely owned, personal property, a Ford F-150 with the Vehicle Identification Number (VIN) of "1FTEX14H1PKA12440". The VIN was then used to perform searches for information on the property.

Following this Officer Santos and Officer Hayes conveyed, via the United States Postal Service, that a criminal case had been initiated against Bikle. The employers of said Officers, including the Los Angeles Sheriff's Department, the City of Lakewood in Los Angeles County, and Los Angeles County, failed to adequately train said officers.

## ASSIGNMENT OF ERROR

### The District Court misinterpreted the law.

(A)    This error included relying upon the following cases, in which the involved courts in turn misinterpreted the law: Ma'at-Ra v. Bateman, 234 F. App'x 514 (9th Cir. 2007)  and Olajide v. California. Department of Motor Vehicles, No. A133375, 2012 WL 893879 (Cal. Ct. App. Mar. 16, 2012). Neither of these cases resulted in an accurate reflection of the California Acts responsible for drivers licenses, nor did the involved courts acknowledge California Supreme Court case law which upholds a distinction between the class of persons who engage in the

14

business of transportation versus the class of persons who merely use the roads as a matter of right, which includes controlling an automobile on the roads.

(B)    The trial court erred in the interpretation of the terms of California Vehicle Code 12500 as the California Legislature clearly defined them. "May" does not mean "shall". The former is permissive and the latter is mandatory.

## The District Court applied the wrong law.

The District Court erred by applying the law, which regulates persons who engage in the business of transportation, to Bikle, who does not engage in the business of transportation and who merely uses his automobile as a means of getting from one place to another, without direct or indirect compensation. The District Court should have used the classification scheme established by the California legislature, and repeatedly cited by the California Supreme Court, to discern that Bikle is a member of the class of persons who are exempted from obtaining a drivers license.

## There are other reasons why the District Court's judgement was wrong.

The District Court may not be aware of facts that create a strong question as to the ability of the current California Judiciary to act in an impartial manner when it comes to the issue of the classification of users of automobiles as those who require a driver's license and those who do not. The California Judge's Retirement Funds both obtain money from the County General Fund, where a judge is seated, and this County General Fund gets a portion of fines and fees from "traffic courts"

15

which deal with automobile related issues. The California Constitution prohibits such a scenario to avoid the prospect of creating a biased Judiciary. <u>See California Constitution, article I, section 26 & California Constitution Article 6 Section 17.</u>

Furthermore, under <u>Buck v. Kuykendall,</u> 267 U. S. 307, 45 S. Ct. 324, 69 L. Ed. 623, 38 A. L. R. 286. it was stated clearly that a citizen who uses the public highways for profit is engaging in a privileged activity, which the State may regulate; however, those who do not make a profit from transporting persons or property for hire upon the public highways have a right to use the road for vehicular travel. So while the District Court claims that Ninth amendment rights can not be enforced under a 1983 suit, Bikle still has the right to travel upon the public right-of-way via automobile, while not engaging in commercial activities via the 14th amendment.

## Other specific issues on appeal.

The California Vehicle Codes 310 and 12500 are unconstitutionally vague and broad. These sections of the California Vehicle Code have been amended to become unconstitutionally over-broad and vague and cannot form the basis of a criminal complaint.

## Argument

## I.     Statutory and State Constitutional Analysis

16

**On the District Court's misinterpretation of the law and subsequent**

**application of the wrong law.**

In order to better understand the District Court's misinterpretation of the law with regards to "driver's licenses" in California, it is necessary to examine the Acts of the Legislature, the case history, and potential biasing factors for the California Judiciary on this topic.

In 1905 the legislature passed, "An act to regulate the operation of motor vehicles on public highways, and making an appropriation for the purpose of carrying out the objects of this act." See Notice #1. In this act the term "chaffeur" means any person operating a motor vehicle as a mechanic, employee or for hire. These individuals were required to pay a registration fee in order to operate a vehicle. The individual would then be issued a number and aluminum badge with that number up upon it, which was to be worn when they were engaged in providing services.

In 1913 the legislature passed, "An act to regulate the use and operation of vehicles upon the public highways and elsewhere; to provide for the registration and identification of motor vehicles and for the payment of registration fees therefore; to provide for the licensing of persons operating motor vehicles; to prohibit certain persons from operating vehicles upon the public highways; to prohibit the possession or use of a motor vehicle without the consent of the owner thereof, and to prohibit the offer to or acceptance by certain persons of any bonus or discount or other consideration for the purchase of supplies or parts for motor

vehicles, or for work or repairs done thereon; to provide penalties for violations of provisions of this act, and to provide for the disposition of fines and forfeitures imposed thereon; to provide for the disposition of registration and license fees, fines and forfeitures collected hereunder; to provide for carrying out the objects of this act and to make an appropriation and to create a revolving fund therefore; and to repeal all acts or parts of acts either in conformity or in conflict with this act."

See Notice #2. This act retained the purpose of 1905 act regarding chauffeurs. Any person who operates a motor vehicle and who directly or indirectly receives pay or any compensation whatsoever for such operation or for any work or service in connection with motor vehicles was considered a chauffeur. Section 7 indicated the requirements for a chauffeur license. There were no requirements created for anyone else to obtain a license of any form.

In 1914 the California Supreme Court gave an opinion on the case Ex parte Stork:

> "The sole contention in this regard is that the Legislature, without reason and warrant, has made an arbitrary classification whereby chauffeurs or drivers of motor vehicles for hire are required to pay a license, while all other drivers of vehicles are classed as 'operators,' and are not required to secure a license or pay a license fee...
>
> That the occupation of a chauffeur is one calling for regulation and therefore permitting a regulatory license fee is beyond question. 'When the calling or profession or business is attended with danger or requires a certain degree of scientific knowledge upon which others must rely, then legislation properly steps in and imposes conditions upon its exercise.' [Citations]

18

There are unquestionable elements of similarity, even of identity, between the driving of an automobile by a professional chauffeur and the driving of a like vehicle by a private owner, designated in this act as an 'operator.' Thus it may not be gainsaid that the ignorance of the one is as likely to result in accident as the same ignorance upon the part of the other. The recklessness of the one is as likely to result in injury as the recklessness of the other. It is equally dangerous to other occupants and users of the highway whether the unskilled or reckless driver be a chauffeur or 'operator.' All these matters may be conceded, and yet there are others of equal significance where the differences between the two classes of drivers are radical. Of first importance in this is the fact that the chauffeur offers his services to the public, and is frequently a carrier of the general public. These circumstances put professional chauffeurs in a class by themselves, and entitle the public to receive the protection which the Legislature may accord in making provision for the competency and carefulness of such drivers. The chauffeur, generally speaking, is not driving his own car. He is entrusted with the property of others. In the nature of things, a different amount of care will ordinarily be exercised by such a driver than will be exercised by the man driving his own car and risking his own property. Many other considerations of like nature will readily present themselves, but enough has been said to show that there are sound, just, and valid reasons for the classification adopted.

In conclusion it may be said that, while on reason we hold the classification to be sound and the license fee therefore legal, no case where any court of last resort has taken a contrary view has been called to our attention, while, besides the intimations in the cases above cited, this precise conclusion was adopted by the Court of Appeals of Maryland in Ruggles v. State, 120 Md. 553, 87 Atl. 1080." In the Matter of Application of Stork, 167 Cal. 294, 295-296, 139 P. 684. See also Notice #3.

This California Supreme Court case has never been overturned and has been ignored by lower courts in California. The case may be old, but as will be demonstrated, this classification scheme, of those who engage in business upon the

19

highways of the state and those who simply use the highways for purposes of vehicular travel, is still in existence.

In 1923 California Supreme Court gave the following opinion on the issue of placing minors in a class by themselves:

> "The application of the law to minors in a class by themselves is not unreasonable or arbitrary. The argument that the law attempts to put into a class by themselves all minors, irrespective of their age, experience, ability to drive, or their financial responsibility, is one that should be presented to the legislative department and not to the courts. In re Stork, 167 Cal. 294, 296, 139 Pac. 684. While some minors are more apt at learning to run motor vehicles than others—possibly more apt than many adults—the fact remains that they are minors. They are in position to be, and in a vast number of cases are, intrusted with the control and operation of motor vehicles upon the public highways. While an automobile is not, in and of itself, a dangerous machine, it may become such in the hands of a careless and indiscreet person. The statute prohibiting the operation of motor vehicles upon the public highways by minors, without their first having obtained licenses which can only be procured upon an assumption of liability for their negligence by parent or guardian, is in effect a determination by the Legislature that minors have not that discretion and judgment which entitles them to unrestrained permission to operate such vehicles upon the public thoroughfares, freed from all parental liability for their negligence except in those cases where it can be established that they are acting as the agent or servant of the owner of the car causing an injury. Daily v. Maxwell, 152 Mo. App. 415, 425, 133 S. W. 351. The Legislature no doubt had in mind the fact that the authorities are in accord in holding that, as a general rule, in an action based on the negligent running of an automobile, the owner of the car who was not present at the infliction of the injury cannot be held liable, except it be shown that the person in charge not only was the agent or servant of the owner, but also was engaged at the time in the business of his service. Daily v. Maxwell, supra; Bryant v. Pacific Elec. Ry. Co., 174 Cal. 737, 742, 164 Pac. 385." Buelke v. Levenstadt, 190 Cal. 684, 214 P. 42. (1923). See also Notice #12.

20

Adults who use their automobiles on the highways and who do not engage in the business of transportation are not required to have an operator's or a chauffeur's license.

In 1925 the legislature passed, "An act to impose a license fee for the transportation of persons or property for hire or compensation upon public streets, roads and highways in the State of California by motor vehicle; to provide for certain exemptions; to provide for the enforcement of the provisions hereof and for the disposition of the amounts collected on account of such licenses; to make an appropriation for the purpose of this act; and to repeal all acts or parts of acts in conflict herewith." See Notice #4. In this act the term "**operator**":

> "... shall include all persons, firms, associations and corporations who operate motor vehicles upon any public highway in this state and thereby engage in the transportation of persons or property for hire or compensation, *but shall not include any person, firm, association or corporation who solely transports by motor vehicle persons to and from or to or from attendance upon any public school or who solely transports his or its own property, or employees, or both, and who transports no persons or property for hire or compensation, but all persons operating freight carrying vehicles so exempted shall be required to obtain from the state Board of equalization and to display exempt emblems in a manner hereinafter provided.*" [Emphasis added by Appellant via bolding and italicizing.]

These operators are required in section 2 to obtain a license from the board of equalization of the state of California to operate each and all of the motor vehicles which the operator desires to operate. Individuals who do not engage in

21

transportation of persons or property for hire are not required to obtain an operator's license."

The California Supreme Court issued the following opinion in 1925:

> "Petitioners emphasize the words which we have italicized and insist that this rule is limited in its application to common carriers. We think it is equally applicable to all persons who seek to make a special and private use of the public highways by transacting their private business thereon and that it applies with equal force to private carriers *who engage in the business of transportation for hire upon the public highways. The reason for the rule which authorizes the state to prohibit the private use of the highways by such carriers is not that they are common carriers; it is that they are making a private use of the public highways, which are owned and paid for by the public, and which are open alike to all persons.*"
>
> ""The gist of our conclusion in that case may be briefly stated as follows: The Legislature by the 1919 amendment to the Auto Stage and Truck Transportation Act plainly intended and attempted to extend the jurisdiction of the Railroad Commission to private carriers when engaged in the business of transportation companies as there defined and to subject such private carriers to the burdens, obligations, and limitations imposed by that act. The question, then, is whether the state has the power to impose such burdens and limitations upon private carriers when using the public highways for the transaction of their business, or whether its power in this behalf is limited in its application to public carriers. *It is now universally recognized that the state does possess such power with respect to common carriers using the public highways for the transaction of their business in the transportation of persons or property for hire.* That rule is stated as follows by the Supreme Court of the United States:
>
> '*A citizen may have, under the Fourteenth Amendment, the right to travel and transport his property upon them [the public highways] by auto vehicle, but he has no right to make the highways his place of business by using them as a common carrier for hire. Such use is a privilege which may be granted or withheld by the state in its discretion, without*

22

*violating either the due process clause or the equal protection clause.*' Buck v. Kuykendall, 267 U. S. 307, 45 S. Ct. 324, 69 L. Ed. 623, 38 A. L. R. 286." [Emphasis added by Appellant via bolding and italicizing.] Holmes v. Railroad Commission of California et al., 197 Cal. 627, 242 P. 486. (1925). See also Notice #11.

The High Court indicates clearly the reason for the rule which authorizes state regulation via the licensing of a certain set of persons who use automobiles for the specific purpose of transporting persons or property for hire upon the highways.

In 1926 the California Supreme Court provided an opinion in the case of Bacon Service Corporation v. Huss relating to the issue of using automobiles and who is required to obtain a license. The following are excerpts from the opinion:

> "In July, 1924, he was threatening criminal prosecutions against the respondent for alleged violations of the provisions of an act entitled 'An act to impose a license fee for the transportation of persons or property for hire or compensation upon public streets, roads and highways in the state of California by motor vehicle; to provide for certain exemptions; to provide for the enforcement of the provisions hereof and for the disposition of the amounts collected on account of such licenses, * * *' approved June 13, 1923 (Stats. 1923, p. 706).
>
> ...
>
> As indicated by its title, the act was designed to impose a license tax upon those engaged in the business of operating motor vehicles upon the public highways for the transportation of persons or property for compensation. Section 1 defines certain words and phrases employed in the act. *The term 'operator' is declared generally to include all persons, firms, associations, and corporations who operate motor vehicles upon any public highway in the state and thereby engage in the transportation of persons or property for hire or compensation.* The term 'motor vehicles' is defined to mean and include all vehicles, automobiles, trucks, or trailers operated upon or over the public highways of this state whether

23

the same be propelled or operated by steam or electricity or propelled or operated by combustion of gasoline, distillate or other volatile and inflammable liquid fuels. The term 'gross receipts from operation' is declared to include all receipts from the operation of any such motor vehicle beginning and ending entirely within this state and excluding revenues from interstate commerce.

Section 2 of the act provides:

'Each operator of a motor vehicle within this state who *transports or desires to transport for compensation or hire persons or property upon or over any public highway within this state shall apply to and secure from the board of equalization of the state of California a license to operate each and all of the motor vehicles* which such operator desires to operate or which such operator from time to time may operate.'

...

*Section 1 excludes from the definition of the term 'operator'* every one 'who solely transports by motor vehicle persons to and from or to or from attendance upon any public school,' and also *every one 'who solely transports his or its own property, or employees, or both, and who transports no persons or property for hire or compensation.'*

...

The next *exemption applies to those who use said public highways for the transportation of their own property or employees or both and to those who transport no persons or property for hire or compensation.* It is obvious that those who operate motor vehicles for the transportation of persons or property for hire enjoy a different and more extensive use of the public highways. They are thereby enabled to engage in business on the public highways and to provide for themselves a livelihood, particularly because of the existence of the public highways and the facilities thereby afforded. Such extraordinary use constitutes a natural distinction and a full justification for their separate classification and for relieving from the burden of the license tax those who merely employ the public highways

24

for the transportation of their own property or employees."
[Emphasis added by Appellant via bolding and italicizing.]
<u>Bacon Service Corporation v. Huss</u>, 199 Cal. 21, 248 P. 235.
(1926). <u>See also Notice #8.</u>

Clearly the California Supreme Court recognized the classification scheme of those who engage in the business of transportation versus those who use their automobiles without engaging in the business of transportation. The latter class is not required to obtain a license in order to use their automobile upon the highways of the state.

Again in 1926 the California Supreme Court issued a ruling in the case of, <u>In the matter of the application of Paul Schmolke for writ of habeas corpus.</u> The following excerpts are relevant:

> *"It is not the type of vehicle, but the peculiar nature of the business conducted upon and over the public highways, that justifies the classification of the statute for licensing purposes."* <u>Ex parte Schmolke</u>, 199 Cal. 42, 248 P. 244. (1926). <u>See also Notice #9.</u>

This statement by the California Supreme Court is of the **utmost importance** with regards to who is required to obtain a license. It is the **business of transportation via automobile upon the highways** that is being regulated, NOT the non-business use of an automobile upon the highway.

In 1937 the legislature passed, "An act to amend sections 1, 2, 3, 4, and 11 of an act entitled "An act imposing a license fee or tax for the transportation of persons or property for hire or compensation upon the public streets, roads and

25

highways in the State of California by motor vehicle and providing that this act shall take effect immediately," approved May 15, 1933; to add sections 5, 6, 7, 8, 9, 10, 12, 15 and 21 to said act; to renumber and amend sections 5, 6, 7, 8, 9, 12, 13, 14, 16, and 17 of said act; to repeal sections 10 and 15 of said act; relating to the taxing of operators engaged in the transportation of persons or property upon the public highways by motor vehicle and providing that this act shall take effect immediately." <u>See Notice #5.</u> Section 1(a) of the act states, the term "**operator**" shall include all persons engaging in the transportation of persons or property for higher or compensation by or upon motor vehicles upon any public highway in the state, either directly or indirectly, **but shall not mean nor include the following: (1) any person transporting his own property in his own motor vehicle;** provided, however, that any such person making a specific charge for such transportation shall be deemed to be an " operator" hereunder;"  Section 2 creates the requirement of obtaining a license to engage in the business of transportation upon the highways of the state. Those deemed an operator are the only ones required to obtain said license. Again, those who do not engage in business have no obligation to obtain an operators license. Perhaps one can see a pattern at this point with regards to the separate functional usage of automobiles and the obligations of one class of persons as a result thereof.

In 1941 the legislature passed, "An act to add Part 4, comprising sections 9601 to 10501, inclusive, to division 2 of, and to add section 50010 to, the revenue and taxation code, thereby consolidating and revising the law relating to taxation

1   and the raising of revenue, including the provisions of "An act imposing a license

2   fee or tax for the transportation of persons or property for hire or compensation

3   upon the public streets, roads and highways in the State of California by motor

4   vehicle and providing that this act shall take effect immediately," approved May

5   15, 1933, as amended, and repealing acts and parts of acts specified herein." <u>See</u>

6   <u>Notice #6.</u> Section 9603 states: **"operator"** includes: (a) any person engaging in

7   the transportation of persons or property for hire or compensation by or upon a

8   motor vehicle upon any public highway in the state, either directly or indirectly.

9   (b) Any person who furnishes any motor vehicle for the transportation of persons

10  or property under a lease or rental agreement when pursuant to the terms thereof

11  the person operates a motor vehicle furnished or exercises any control of, or

12  assumes any responsibility for, or engages either in whole or in part in, the

13  transportation of persons or property in the motor vehicle furnished. **"Operator"**

14  **does not include any of the following: (a) Any person transporting his own**

15  **property in a motor vehicle owned or operated by him unless he makes a**

16  **specific charge for the transportation.** This subdivision does not in any way

17  limit any other exemption granted by this section." Chapter 2 of the act imposes a

18  license tax upon operators at section 9651. Chapter 3 requires every operator who

19  engages in the business of transportation to obtain a license. Once again, there is

20  no requirement for an individual who is not engaged in the business of

21  transportation to obtain a license to utilize their automobile upon the highways.

27

1    In 1957 the legislature passed, "An act to add Sections 69.1 and 69.2 to the

2    Vehicle Code, relating to drivers' licenses." <u>See Notice #7.</u> In this short act the

3    "operators" license and the "chauffeurs" license are consolidated under the term "

4    Driver's license." Section 69.1 reads as follows: "Driver's license." **"Driver's**

5    **license" includes both an operators and a chauffeurs license."** As one can see,

6    there are two types of licenses under this term and both of these types of licenses

7    are required of individuals who engage in the business of transportation.

8    Individuals who do not engage in the business of transportation have never been

9    required to obtain either license.

10    In 1959 the legislature passed, "An act to repeal and re-enact the Vehicle

11    Code and to add Chapter 6.5 (commencing at Section 3067) to Title 14, Part 4,

12    Division 3 of the Civil Code and to amend Section 11004.5 of the Revenue and

13    Taxation Code, relating to vehicles." <u>See Notice #13.</u> General provisions within

14    section 2 indicate that, "The provisions of this code, in so far as they are

15    substantially the same as existing provisions relating to the same subject matter,

16    shall be construed as restatements and continuations thereof and not as new

17    enactments." Section 310 reads, "Driver's license" includes both an operators and a

18    chauffeurs license." Division 6, has the heading, "OPERATORS' AND

19    CHAUFFEURS' LICENSES", Chapter 1. "Issuance of Licenses, Expiration, and

20    Renewal. Article 1. Persons Required to be Licensed, Exemptions, and Age

21    limits." Section 12500 (a) states, "No person shall drive a motor vehicle upon a

highway unless he then holds a drivers license issued under this code, except such

persons as are expressly exempted under this code." Section 12500 (d) reads as, "It is a misdemeanor for any person to drive a motor vehicle upon a highway as a chauffeur unless he then holds a chauffeurs license Duly issued under this code, except such persons as are expressly exempted under this code." Clearly, this entire division is intended for those who engage in the business of transportation. The division heading is comprised of the two categories of licenses issued to those who engage in two different types of business of transportation. All of the acts passed up to this point expressly exempted those who do not engage in the business of transportation from obtaining either an operators or a chauffeurs license or a drivers license, which includes the former two licenses.

In 1960 the California District Court of Appeal, Second Appellate District, provided the following opinion which relied upon the 1914 case of In re stork:

> "Classifications of persons authorized to operate motor vehicles have been upheld with respect to minors (Buelke v. Levenstadt, 190 Cal. 684, 688, 214 P. 42); financial responsibility of operators (Watson v. Division of Motor Vehicles, 212 Cal. 279, 282, 298 P. 481); chauffeurs and operators (In Matter of Application of Stork, 167 Cal. 294, 295, 139 P. 684). *The latter case, upholding the validity of a statute requiring chauffeurs to pay a license fee but exempting all other drivers from payment, states in respect to the differences between the two classes of drivers* (167 Cal. at page 296, 139 P. at page 685):
>
> 'Of first importance in this is the fact that the chauffeur offers his services to the public, and is frequently a carrier of the general public. These circumstances put professional chauffeurs in a class by themselves, and entitle the public to receive the protection which the Legislature may accord in making provision for the competency and carefulness of such drivers. The chauffeur, generally speaking, is not driving his own car. He is intrusted with the property of others. In the nature of

things a different amount of care will ordinarily be exercised by such a driver than will be exercised by the man driving his own car and risking his own property. Many other considerations of like nature will readily present themselves, but enough has been said to show that there are sound, just, and valid reasons for the classification adopted.'" [Emphasis added by Appellant via bolding and italicizing.] Beamon v. Department of Motor Vehicles,180 Cal.App.2d 200, 4 Cal.Rptr. 396. (1960). See also Notice #10.

The classification scheme which distinguishes between those who engage in the business of transportation and those who do not engage in the business of transportation but who use an automobile upon the highways has never been abrogated.

In 1961 the legislature passed, "An act to amend Sections 310, 12500, 12502, 12503, 12506, 12510, 12511, 12512, 12514, 12515, 12517, 12518, 12519, 12800, 12804, 12811, 12813, 12814, 13100, 13550, 13551, 13802, 14605, 14606, 14607, 14900, 16081, 22514, 42230, and the heading of Division 6 (commencing with Section 12500) of, and to repeal Sections 250, 450, 12801, 12812, and 14604 of the Vehicle Code, relating to drivers' licenses." See Notice #14. It is without a doubt that this legislation, and that in the years following, are overly broad and vague and therefore unconstitutional. Section 2 reads, "Section 310 of said code is amended to read: 310. "Driver's license" is a license to drive the type of motor vehicle or combination of vehicles for which a person is licensed under this code." This amendment obfuscates the original intention of the term which was to encompass both the operator's and the chauffeur's license. Rather than maintaining a distinction between those who engage in the privileged activity of using the

30

highways for commercial purposes and those who use the highways as a matter of right, this amendment eliminates such a distinction. This is stealthy government encroachment upon the rights of the people. Section 4 states: "The heading of Division 6 (commencing with section 12500) of said code is amended to read: DIVISION 6. DRIVERS' LICENSES" This amendment also creates vagary about the division. The layman is misled as to what this division is supposed to encompass. The layman uses the word driver in a manner to describe everyone who uses an automobile including those who engage in the business of transportation and those who merely use their automobile to travel from point A to point B without transporting persons or property for hire. All of the legislative acts up to this point clearly do not require everyone who uses an automobile to obtain a license. Section 5 indicates: "Section 12500 of said code is amended to read: 12500. (a) No person shall drive a motor vehicle upon a highway unless he then holds a drivers license issued under this code, except such persons as are expressly exempted under this code." Given the amendments which have occurred here the layman would believe that they are required to have a drivers license in order to use their automobile upon the highway. These amendments do not create any new obligations. They are supposed to be restatements of provisions that have been carried down through the decades. These amendments are vague and broad which is unconstitutional. The <u>California Constitution, article I, section 3(b)(2)</u> is also violated by this vague language.

The Legislature passed the following act in 1963, "An act to amend sections 310 and 12500 of the vehicle code, relating to drivers license." See Notice #15. Section 310 was amended to read, " 310. "Driver's license" is a valid license to drive the type of motor vehicle or combination of vehicles for which a person is licensed under this code." Section 12500 was amended to read, "(a) no person shall drive a motor vehicle upon a highway unless he then holds a drivers license issued under this code, except such persons as are expressly exempted under this code. (b) No such person shall drive a motor vehicle or combination of vehicles that is not of a type for which he is licensed." These amendments do not clarify the matter with which they are concerned. They are broad and vague in nature. The original Acts clearly dealt with individuals who only engage in the business of transportation and exempted those who did not. The result is that it appears as if every individual who uses an automobile is subject to the sections when only a subset of individuals who use automobiles for commercial purposes are actually subject to the sections.

The Legislature passed the following act in 1971, "An act to amend sections 305 and 310 of the vehicle code, relating to drivers licenses." See Notice #16. Section 1. states,  "Section 305 of the vehicle code is amended to read:  305. A "driver" is a person who drives or is an actual physical control of a vehicle..." This section of code overlaps with the layman's perception of who is a driver. However, section 310 does not accurately reflect the original act and its intentions to regulate those who engage in the business of transportation. After the 1971 amendment,

1   section 310 reads, "310. "Drivers license" is a valid license to drive the type of

2   motor vehicle or combination of vehicles for which a person is licensed under this

3   code or by foreign jurisdiction." These amendments to section 310 are completely

4   misleading as to who is being regulated. The clarity which existed in 1959 is

5   absent in these later amendments. As a reminder, in 1959 section 310 read,

6   ""Driver's license" includes both an operators and a chauffeurs license." The

7   layman would have had a more accurate perception of what a drivers license was

8   based upon this description.

9        In 1984 the legislature passed the following act, "An act to amend Sections

10  4000, 12500, 12501, and 14605 of the Vehicle Code, relating to vehicles." See

11  Notice #17. In section 2 the following amendments is found, "12500. (a) No

12  person shall drive a motor vehicle upon a highway, unless the person then holds a

13  drivers license issued under this code, except those persons who are expressly

14  exempted under this code."

15        The legislature passed following act in 1990, "An act to amend Sections

16  405, 2936, 12500, and  12804.9 of, and to add Section  14602.5 to, the Vehicle

17  Code, relating to vehicles." See Notice #18. Section 12500 (a) was amended to

18  read, "No person shall drive a motor vehicle upon a highway, unless the person

19  then holds a drivers license issued under this code, except those persons who are

20  expressly exempted under this code."

21        In 1993 the legislature passed following act, "" An act to amend Sections

    39005 and 81033 of, and to repeal Section 81034 of, the Education Code, to

                                                                        33

amend Section 14007 of the Government Code, to amend Sections 21602, 99234, and 102051 of the Public Utilities Code, to amend Section 101.8 of, and to add Section 2121 to, the Streets and Highways Code, and to amend Sections 410, 635, 4453, 4461, 4604, 11713.3, 12500, 12502, 12505, 12517.2, 12524, 12802, 12804.2, 12804.7, 12810.5, 12812, 13352, 14606, 15250.5, 15250.6, 15255, 15255.1, 15275, 21456.1, 21801, 22450, 22651, 22658, 23157, 23161, 23166, 23168, 23186, 23195, 34500, 34505.1, 34505.6, 35581, 35780.3, 36305, and 40508 of, and to amend and repeal Sections 12804.9 and 12804.12 of, and to repeal Sections 12804 and 23157 of, the Vehicle Code, relating to transportation, and declaring the urgency thereof, to take effect immediately." <u>See Notice #19.</u> Again, section 12500 was amended to read, "No person shall drive a motor vehicle upon the highway, unless the person then holds a drivers license issued under this code, except those persons who are expressly exempted under this code."

Also, in 1993 the Legislature passed the following act, "An act to amend Section 5220 of the Business and Professions Code, to amend Section 44241 of the Health and Safety Code, and to amend Sections 407, 1808.4, 5004.1, 12500, 12951, 14601.2, 14601.5, 14608, 14609, 22511.55, 22511.6, 23302, and 40202 of, to add Section 5902.5 to, and to repeal Section 24016 of, the Vehicle Code, relating to transportation." <u>See Notice #20.</u> Section 12500 was amended to read, "No person shall drive a motor vehicle upon the highway, unless the person then holds a valid drivers license issued under this code, except those persons who are expressly exempted under this code."

34

The Legislature passed the following act of 1996, "An act to amend sections 15975 and 29535 of the government code, to amend section 99314.6 of, and to add sections 130051.21 and 130243 to, the public utilities code, to amend sections 188.8, 348, and 438 of, and to add section 73.3 to, the streets and highways code, and to amend sections 1801, 4000, 12500, 12800.5, 12804.14, 21212, 22651, 23136, 23137, 23158.2, and 42205 of, and to add Sections 5002.7 and 25282 to, and to repeal section 32108 of, the vehicle code, relating to transportation, and declaring the urgency thereof, to take effect immediately." <u>See Notice #21.</u> Section 12500 was amended to read, "No person shall drive a motor vehicle upon the highway, unless the person then holds a valid driver's license issued under this code, except those persons who are expressly exempted under this code."

The legislature passed the following act in 2003, "An act to amend Sections 260 and 15210 of, and to add Section 35103 to, the Vehicle Code, relating to vehicles." <u>See Notice #22.</u> Section 260 was amended to read, "(a) A "commercial vehicle" is a motor vehicle of the type required to be registered under this code used or maintained for the transportation of persons for higher, compensation, or profit were designed, used, or maintained primarily for the transportation of property. (b) Passenger vehicles and house cars that are not used for the transportation of persons for hire, compensation, or profit are not commercial vehicles. This subdivision shall not apply to chapter 4 (commencing with section 15,200) of division 6. (c) Any vanpool vehicle is not a commercial vehicle." Passenger vehicles that are not used for the transportation of persons for higher

1  compensation or profit are not required to be registered under the code, as is

2  clearly stated in section 260. This classification is clearly harmonious with the

3  distinction between who is required to obtain a drivers license, which includes

4  either and operators or a chauffeurs license. Those who use the highways for

5  personal profit are not only required to obtain a drivers license for that activity, but

6  they are required to register their vehicle because it is used in commerce. The

7  license and registration allows the state to regulate their business activities.

8      In 2004 the legislature passed the following act, "An act to amend Sections

9  407.5, 12500, 12509, 12804.9, 21225, and 21235 of, and to add Section 21226 to,

10  the Vehicle Code, relating to vehicles." <u>See Notice #23.</u> Section 12500 was

11  amended to read, "(a)A person **may** not drive a motor vehicle upon a highway,

12  unless the person holds a valid drivers license issued under this code, except those

13  persons who are expressly exempted under this code." **Parts a, b, c, d, of Section**

14  **12500, all use the term "may". Part e, of Section 12500, utilizes the term**

15  **"shall".** The California vehicle code section 15 reads as follows, "Shall is

16  mandatory and may is permissive." Section 12500 reads as permissive with this

17  amendment. One cannot be punished for doing what one is allowed to do by law.

18      "When the legislators speak through statutes, their enactments

19      must be given a strict interpretation. The law must be applied as
    it is written. It cannot be extended by judicial interpretation."
    <u>Chapman v. Aggeler</u>, 47 Cal. App. 2d. 848, 119 P.2d 204.

20      (1941)

21      "When a statute prescribes the meaning to be given to particular
    terms used by it, that meaning is generally binding upon the
    court." <u>Urban Renewal Agency v. California Coastal Zone</u>

36

Conservation Comm., 15 Cal. 3d. 577, 125 Cal. Rptr. 485, 542 P.2d. 645. (1975)

"It is a well-settled principle of statutory construction that the word 'may' is ordinarily construed as permissive, whereas 'shall' is ordinarily construed as mandatory, particularly when both terms are used in the same statute." Santa Cruz Rock Pavement Co. v. Heaton, 105 Cal. 162, 165; [38 P. 693]    (1894); Rosenfield v. Superior Court, 143 Cal.App.3d 198, 202 (1983); Common Cause v. Board of Supervisors,   49 Cal.3d 432 , 261 Cal.Rptr. 574; 777 P.2d 610 (1989)

In 2007 the legislature passed following act, "An act to amend Sections 1804, 5002.7, 12500, 12810.5, 12811, 13005, 15210, 22450, and 22452 of the Vehicle Code, relating to vehicles." See Notice #24.  Section 12500 was amended to read, "A person may not drive a motor vehicle upon a highway, unless the person then holds a valid drivers license issued under this code, except those persons who are expressly exempted under this code.

It should be clear upon a review of the legislative acts and case law that persons who use the public highways for private gain by engaging in the business of transportation comprise a class who is privileged and thereby requires regulation via licensing, while persons who are adults and who do not use the public highways for private gain are not regulated nor are they required to hold a drivers license, which includes and operators or chauffeurs license.

None of the cases relied upon by the District Court gave an exhaustive review of this subject matter. The lower California courts substituted their views for those of the legislature.

"The Court may not substitute its views for those of the Legislature when the legislative decision has been made after weighing policy matters as seen by the legislature." <u>Jackson v. San Diego</u>, 121 Cal. App. 3d. 579, 587, 175 Cal. Rptr. 395. (1981)

The individuals who made claims, in the cases cited by the District Court, that they were not required to have a drivers license may not have provided the degree of detail required for the courts that they found themselves in to make a proper decision, or the judiciary may have been biased by the pecuniary rewards mentioned in this appeal. The potential failure on the part of those individuals to provide such detail should in no way prejudice Bikle's claims. The District Court erred by relying upon these cases: <u>Ma'at-Ra v. Bateman</u>, 234 F. App'x 514 (9th Cir. 2007), <u>Olajide v. California Deparment of Motor Vehicles</u>, No. A133375, (Cal. Ct. App. Mar. 16, 2012). The District Court should have relied upon the legislative acts and case law as included in this appeal.

**There are other reasons why the District Court's judgement was wrong.**

Any reasonable individual would concur that the following facts cast a shadow of doubt over the ability of a judge to behave in an impartial manner. A pecuniary reward exists for all judges in the State of California in the event of a charge and conviction for all "traffic cases". The pecuniary reward is contingent strictly upon convictions, and this reward is withheld in the event of the acquittal

38

or dismissal of charges. Contingency rules structured as such completely eliminate all appearances of impartiality. The appearance of impartiality could be maintained by structuring the retirement benefits in such a manner as to avoid the possibility of discrimination training with regards to the outcome of any matters decided by the judges. That is to say, retirement allowances should never be tied directly to any case decisions made by a judge.

In the event of a conviction for violating CVC 12500(a) or 16028(c), the following statutes come into play with the assessment of fines:

> California Penal Code (PC) 1463. All fines and forfeitures imposed and collected for crimes shall be distributed in accordance with Section 1463.001.

> PC 1463.001. Except as otherwise provided in this section, all fines and forfeitures imposed and collected for crimes other than parking offenses resulting from a filing in a court shall as soon as practicable after receipt thereof, be deposited with the county treasurer, and each month the total fines and forfeitures which have accumulated within the past month shall be distributed, as follows:

> (a) The state penalties, county penalties, special penalties, service charges, and penalty allocations shall be transferred to the **proper funds** as required by law.

Penal Code 1463.22 shifts excess and fixed amounts of moneys, from convictions of CVC 16028, into the general fund described in CVC 42201(a):

> PC 1463.22. (a) Notwithstanding Section 1463, of the moneys deposited with the county treasurer pursuant to Section 1463, seventeen dollars and fifty cents ($17.50) for each conviction of a violation of Section 16028 of the Vehicle Code shall be deposited by the county treasurer in a special account and allocated to defray costs of municipal and superior courts

incurred in administering Sections 16028, 16030, and 16031 of the Vehicle Code. **Any moneys in the special account in excess of the amount required to defray those costs shall be redeposited and distributed by the county treasurer pursuant to Section 1463.** [Emphasis added.]

PC 1463.22. (c) Notwithstanding Section 1463, of the moneys deposited with the county treasurer pursuant to Section 1463, **ten dollars ($10) upon the conviction of, or upon the forfeiture of bail from, any person arrested or notified for a violation of Section 16028 of the Vehicle Code shall be deposited by the county treasurer in a special account and shall be transmitted monthly to the Controller for deposit in the General Fund.** [Emphasis added.]

The following statute would route the fines from a conviction of charge 12500(a), a misdemeanor, directly into the general fund:

CVC 42201. (a) Of the total amount of fines and forfeitures received by a county under **Section 1463.001** of the Penal Code, fines and forfeitures collected from any person charged with a misdemeanor under this code following arrest by any officer employed by the state or by the county shall be paid into the **general fund** of the county. However, the board of supervisors of the county may, by resolution, provide that a portion thereof be transferred into the road fund of the county. [Emphasis added]

California Constitution Article 6 Judicial Section 20 provides that, "The Legislature shall provide for retirement, with reasonable allowance, of judges of courts of record for age or disability."

The California Government Code (GC) 75100 establishes the **Judges' Retirement Fund** and GC 75600 creates **Judges' Retirement System II Fund**:

> Government Code (GC) 75100. There is in the State Treasury a fund known as the Judges' Retirement Fund. All retirement allowances payable by law to judges shall be paid out of this fund. The fund shall consist of all cash, securities, or other assets paid into it in accordance with this article.

> GC 75600. There is in the State Treasury, subject to the control of the board, a trust fund known as the Judges' Retirement System II Fund. The fund shall receive all assets paid into it including, without limitation, judges' contributions made pursuant to Sections 75601 and 75602 and the state's contributions made pursuant to Section 75600.5. All retirement allowances payable by law to judges to whom this chapter is applicable shall be paid from that fund. Notwithstanding Section 13340, all moneys in the fund are continuously appropriated without regard to fiscal years, for payments which shall be made upon warrants drawn by the Controller upon demands made by the board.

Both GC 75101 and GC 75600 take moneys from the county general fund, which are then allocated to both the **Judges' Retirement Fund** and the **Judges' Retirement System II Fund**:

> GC 75101. The Controller shall at the end of each month ascertain the aggregate amount of the annual salaries of judges covered by the system, and out of the **General Fund** he or she shall transfer monthly into the **Judges' Retirement Fund** a sum equal to 8 percent of one-twelfth of the aggregate amount of those salaries. [Emphasis added.]

> 75600.5. (a) The Controller shall at the end of each month ascertain the aggregate amount of the annual salaries, not including the additional compensation pursuant to Section 68203.1, of all judges covered by the **Judges' Retirement**

41

**System II**, and out of the **General Fund** he or she shall transfer monthly into the **Judges' Retirement System II Fund** a sum equal to 18.8 percent of one-twelfth of the aggregate amount of those salaries. [Emphasis added].

A conviction of any one, on the aforementioned charges, would create a pipeline for moneys into the retirement funds for judges. The dynamics of the aforementioned California Codes provide a financial motivation for insuring a conviction on the charges. Furthermore, there is financial motivation for the California judiciary to ignore the legislative acts which created exemptions and which never required a driver's license, operator's license, or chauffeur's license from the class of persons who travel by automobile upon the highways and who do not engage in the transportation of persons or property for hire. By ignoring to legislative acts which control the obligations for drivers licenses the California judiciary converts the class of persons who the legislature has exempted from drivers license requirements into members of the class of persons required to have a drivers license. This is a conversion of the right to travel by automobile into the privilege of operating a motor, which is a commercial activity. This creates a larger class of persons which the judiciary can potentially convict in traffic cases in order to collect more fines and fees for retirement.

The California Judges retirement system which is currently in place is unconstitutional as it violates the due process clause in the fourteenth amendment. No one can expect a fair and impartial judiciary if the judiciary receives a pecuniary reward if, and only if, they convict some one of traffic offenses, even if

42

that individual is exempted by the legislature and has never been required by the acts of the legislature to obtain a driver's license.

## II.                                    Federal Law Analysis

### The District Court applied the wrong law.

Bikle had the right to travel and transport his property upon the highways by automobile. The following is the correct law.

> *'A citizen may have, under the Fourteenth Amendment, the right to travel and transport his property upon them [the public highways] by auto vehicle, but he has no right to make the highways his place of business by using them as a common carrier for hire. Such use is a privilege which may be granted or withheld by the state in its discretion, without violating either the due process clause or the equal protection clause.'* [Emphasis added by Appellant via bolding and italicizing.] Buck v. Kuykendall, 267 U. S. 307, 45 S. Ct. 324, 69 L. Ed. 623, 38 A. L. R. 286.

Bikle has never made the highways his place of business by using them to transport persons or property for hire.

> "To punish a person because he has done what the law plainly allows him to do is a due process violation "of the most basic sort." Bordenkircher v. Hayes, 434 U.S. 357, 363 .

Bikle was punished for doing what the law allowed him to do.

### Other specific issues on appeal.

California Vehicle Codes §310 & §12500 are unconstitutionally vague and broad with regard to who is a member of the class of persons being regulated and

1  who is not being regulated. It is also vague and broad with regard to the use of the

2  term "may", which is defined by the California Vehicle Code as permissive

3  whereas the term "shall" is defined as mandatory.

4      These statutes are unconstitutionally overbroad and vague and cannot form

5  the basis of a criminal complaint.

6      This statute denies a person's constitutional right to due process by failing to

7  adequately instruct him as to what constitutes a violation of the law. A vague

8  statute violates the due process clause of the 14th amendment. This concept is

9  known as void for vagueness. Vagueness is a subject of both constitutional law and

10 criminal law. It is taught in every law school in this country and has been for the

11 last 50 years. Two of the leading cases regarding vagueness are <u>Grayned v. City of</u>

12 <u>Rockford</u>, 408 U.S. 104 (1972) and <u>Connally v. General Construction Co.</u>, 269

13 U.S. 385 (1926). In Connally a statute was held to be fatally vague. The Supreme

14 Court said:

15      "The question whether given legislative enactments have been
        thus wanting in certainty has frequently been before this court.
16      In some of the cases the statutes involved were upheld; in
        others, declared invalid. The precise point of differentiation in
17      some instances is not easy of statement; but it will be enough
        for the present purposes to say generally that the decisions of
18      the court, upholding statutes as sufficiently certain, rested upon
        the conclusion that they employed words or phrases having a
19      technical or other special meaning, well enough known to
        enable those within our reach to correctly apply them."

20
   In <u>Grayned v. City of Rockford</u>, 408 U.S. 104 (1972) the Supreme Court stated:

21
        "It is a basic principle of due process that an enactment is void
        for vagueness if its prohibitions are not clearly defined. Vague

44

laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application."

California Vehicle Codes §310 & §12500 are unconstitutionally vague and broad.

**CONCLUSION**

Bikle requests that the order for dismissal with prejudice be vacated and that this case be remanded to the lower court with an order to allow Bikle to make the aforementioned corrections to his original complaint and to proceed where it left off. The County of Los Angles, City of Lakewood, and Los Angeles Sheriff's Department have failed to adequately train their employees and Bikle should be allowed to pursue damages for this negligence. Bikle requests that this court order the District Court to acknowledge the California Legislature's exemption of those who do not engage in the transportation of persons or property for hire upon the highways from obtaining a driver's license. Bikle also requests that this court grant any other and further relief to which he is found to be entitled.

Respectfully Submitted,

DATED: August 25, 2014:

Philip Christian Bikle, Pro Se

46

# ADDENDUM

## CONSTITUTIONAL PROVISIONS AND STATUTES

United States Constitution, Amendment IV:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

United States Constitution, Amendment V:

"No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury, except in cases arising in the land or naval forces, or in the militia, when in actual service in time of war or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation."

United States Constitution, Amendment IX:

"The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people."

United States Constitution, Amendment XIV, Section 1:

"All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due

1    process of law; nor deny to any person within its jurisdiction the
2    equal protection of the laws."

3    <u>CALIFORNIA CONSTITUTIONAL PROVISIONS AND STATUTES</u>

4    California Constitution, Preamble:

5    "We, the People of the State of California, grateful to Almighty
     God for our freedom, in order to secure and perpetuate its
6    blessings, do establish this Constitution."

7    California Constitution, article I, section 1:

8    "All people are by nature free and independent and have
     inalienable rights. Among these are enjoying and defending life
9    and liberty, acquiring, possessing, and protecting property, and
     pursuing and obtaining safety, happiness, and privacy."
10

11   California Constitution, article I, section 3(b)(2):

12   "A statute, court rule, or other authority, including those in
     effect on the effective date of this subdivision, shall be broadly
13   construed if it furthers the people's right of access, and narrowly
     construed if it limits the right of access. A statute, court rule, or
14   other authority adopted after the effective date of this
     subdivision that limits the right of access shall be adopted with
15   findings demonstrating the interest protected by the limitation
     and the need for protecting that interest."
16

17   California Constitution, article I, section 26:

18   "The provisions of this Constitution are mandatory and prohibitory, unless by

19   express words they are declared to be otherwise."

20   California Constitution, article VI, section 17:

21   "A judge of a court of record may not practice law and during
     the term for which the judge was selected is ineligible for public
     employment or public office other than judicial employment or

judicial office, except a judge of a court of record may accept a part-time teaching position that is outside the normal hours of his or her judicial position and that does not interfere with the regular performance of his or her judicial duties while holding office. A judge of a trial court of record may, however, become eligible for election to other public office by taking a leave of absence without pay prior to filing a declaration of candidacy. Acceptance of the public office is a resignation from the office of judge. *A judicial officer may not receive fines or fees for personal use.*

A judicial officer may not earn retirement service credit from a public teaching position while holding judicial office."

California Vehicle Code § 310:

"A "driver's license" is a valid license to drive the type of motor vehicle or combination of vehicles for which a person is licensed under this code or by a foreign jurisdiction."

California Vehicle Code § 12500:

"(a) A person may not drive a motor vehicle upon a highway, unless the person then holds a valid driver's license issued under this code, except those persons who are expressly exempted under this code.

(b) A person may not drive a motorcycle, motor-driven cycle, or motorized bicycle upon a highway, unless the person then holds a valid driver's license or endorsement issued under this code for that class, except those persons who are expressly exempted under this code, or those persons specifically authorized to operate motorized bicycles or motorized scooters with a valid driver's license of any class, as specified in subdivision (h) of Section 12804.9.

(c) A person may not drive a motor vehicle in or upon any offstreet parking facility, unless the person then holds a valid driver's license of the appropriate class or certification to operate the vehicle. As used in this subdivision, "offstreet parking facility" means any offstreet facility held open for use by the public for parking vehicles and includes any publicly owned facilities for offstreet parking, and privately owned facilities for offstreet parking where no fee is charged for the privilege to park and which are held open for the common public use of retail

customers.

(d) A person may not drive a motor vehicle or combination of vehicles that is not of a type for which the person is licensed.

(e) A motorized scooter operated on public streets shall at all times be equipped with an engine that complies with the applicable State Air Resources Board emission requirements."

Case 8:13-cv-01662-DOC-JPR   Document 5   Filed 12/13/13   Page 1 of 8   Page ID #:37

I HEREBY CERTIFY THAT THIS DOCUMENT WAS SERVED BY ~~Plaintiff~~ Plaintiff
FIRST CLASS MAIL POSTAGE PREPAID, TO ~~ALL COUNSEL~~
~~(OR PARTIES) AT~~ THEIR RESPECTIVE MOST RECENT ADDRESS OF
RECORD IN THIS ACTION ON THIS DATE.

DATED: ____12·13·13____

_____
DEPUTY CLERK



FILED-SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT

DEC 1 3 2013

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

PHILIP C. BIKLE,                    ) Case No. SACV 13-1662-DOC (JPR)
                                    )
              Plaintiff,            )
                                    ) ORDER DISMISSING COMPLAINT WITH
         vs.                        ) PREJUDICE
                                    )
OFFICER A. SANTOS et al.,           )
                                    )
              Defendants.           )
_____)

     This is Plaintiff's second civil rights lawsuit stemming

from Los Angeles County Sheriff's Deputy A. Santos's issuance of

a traffic citation to him.  The Court dismissed the first such

lawsuit on July 26, 2013, because it was frivolous and failed to

state a claim against any of the named defendants.  This one

fares no better.

     Plaintiff filed this action pro se on October 23, 2013.

Just as with the first lawsuit, he alleges violations of 42

U.S.C. §§ 1983 and 1985(3) and relies on the Fourth, Fifth, and

14th amendments to the U.S. Constitution; this time around, he

has also raised claims based on the Ninth Amendment as well as

state-law fraud.  (See Compl. ¶¶ 6, 75-89, 90-95.)  He names as

1

defendants Deputy Santos, LASD Deputy Cathy Hayes, the LASD, the County of Los Angeles, the City of Lakewood, and various Does. He seeks injunctive relief "to halt all systemic actions of denial of due process and the systematic and fraudulent violations of the public right to travel on the right-of-ways," compensatory damages, and punitive damages. (Id. at 28-29.)

Because Plaintiff paid the full filing fee and is not a prisoner, the Complaint is not subject to preservice screening under 28 U.S.C. §§ 1915(e)(2) or 1915A. See Brown v. California, No. EDCV 11-0707-SVW (MLG), 2011 WL 5827958, at *1 (C.D. Cal. May 18, 2011), accepted by 2011 WL 5828717 (C.D. Cal. Nov. 18, 2011). The Court may, however, sua sponte dismiss a frivolous, patently insubstantial complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). See Neitzke v. Williams, 490 U.S. 319, 327 n.6, 109 S. Ct. 1827, 1832 n.6, 104 L. Ed. 2d 338 (1989) (courts lack subject matter jurisdiction to consider "patently insubstantial" complaints); see also Franklin v. Murphy, 745 F.2d 1221, 1227 n.6 (9th Cir. 1984) ("A paid complaint that is obviously frivolous does not confer federal subject matter jurisdiction and may be dismissed sua sponte before service of process." (citation and internal quotation marks omitted)). A frivolous complaint "lacks an arguable basis either in law or in fact." Neitzke, 490 U.S. at 325.

### ALLEGATIONS OF THE COMPLAINT

On October 24, 2011, Plaintiff was involved in a traffic accident in the parking lot of the Hawaiian Gardens Casino. (Compl. ¶ 16.) Defendant Santos responded to the scene and proceeded to ask questions of Plaintiff and the other car's

1    driver.  (Id. ¶ 20.)  "At this point," Plaintiff "perceived

2    [himself] to be under arrest and . . . not free to go."  (Id.

3    ¶ 21.)  When Deputy Santos asked Plaintiff if he had a driver's

4    license, Plaintiff responded that he did not because he "wasn't

5    engaged in commerce transporting persons or property for hire,

6    which invoked the statutory obligations of a license."  (Id.

7    ¶¶ 24-25.)  Santos then copied the vehicle identification number

8    off the inside of the driver's-side door of Plaintiff's truck.

9    (Id. ¶ 29.)  Santos gave Plaintiff a Notice to Appear because he

10   did not have a driver's license, which Plaintiff signed "under

11   duress" of being "taken into custodial arrest."  (Id. ¶¶ 29, 37.)

12          On December 15, 2011, Defendant Hayes

13          utilized the USPS to mail a document titled, 'Notice of

14          Correction and Proof of Service' to Plaintiff.  Officer

15          Hayes invoked the name of the People of the State of

16          California on the Notice of Correction such that it

17          appeared   prosecution   had   been   initiated   against

18          Plaintiff.

19   (Id. ¶ 42.)  Plaintiff makes a similar allegation against

20   Defendant Santos, adding that he is "not licensed to practice

21   law."  (Id. ¶¶ 41, 47.)  Plaintiff alleges that the Doe

22   Defendants were all "employed at the Los Angeles Sheriff's

23   Department" and took part in mailing or filing the Notice to

24   Appear.  (Id. ¶¶ 9, 43-44.)

25          Plaintiff alleges that Deputy Santos violated his Fourth

26   Amendment rights by "falsely arresting" Plaintiff without

27

28

3

1  probable cause, requiring him to provide a thumbprint,[1] searching

2  the inside door panel of Petitioner's truck "for the VIN without

3  probable cause," and using the VIN "to perform additional

4  searches via computer databases." (Id. ¶¶ 59, 66.) Deputy

5  Santos allegedly violated Plaintiff's Ninth Amendment rights as

6  well by restricting his right to travel. (Id. ¶¶ 75-84.)

7  Plaintiff alleges that both Santos and Hayes committed "mail

8  fraud" "by sending a communication via USPS mail which conveyed

9  to the Plaintiff that prosecution of criminal charges had been

10  initiated against him by the People of the State of California."

11  (Id. ¶¶ 90-95.) He further sues all the individual Defendants

12  under the Fifth Amendment for all their actions, which allegedly

13  deprived him of due process (id. ¶¶ 101-06), as well as under

14  § 1985(3) for conspiracy "to defraud persons who happen to get

15  caught up in any alleged traffic related matter" (id. ¶ 114).

16      Finally, Plaintiff claims that the entity Defendants

17  fostered "long standing, pervasive pattern[s] of lawlessness" in

18  their employees as a result of inadequate training and

19  supervision. (Id. ¶¶ 70-74, 85-89, 96-100, 108-11.)

20                          **DISCUSSION**

21      Plaintiff's Complaint is frivolous and fails to state a

22  claim upon which relief might be granted. All his claims stem

23  from the underlying premise that because he does not use his

24  vehicle for commercial purposes, he is not required to have a

26  [1]California Penal Code § 853.5(a) provides that if an arrestee
27  for a traffic infraction does not have a driver's license "or other
   satisfactory evidence of identity in his or her possession," the
28  officer may require the arrestee to place a thumbprint on the
   Notice to Appear.

1   driver's license.  (See id. ¶¶ 60-62.)  The Ninth Circuit has

2   rejected as frivolous a nearly identical § 1983 claim.  In Ma'at-

3   Ra v. Bateman, 234 F. App'x 514 (9th Cir. 2007), the Ninth

4   Circuit adopted the "reasons set forth by the magistrate judge in

5   his November 9, 2005 report, adopted in full by the district

6   court," for rejecting the plaintiff's claims.  Id. at 514.  The

7   Magistrate Judge found that Ma'at-Ra's claims, which stemmed in

8   part from his failure to provide a driver's license when asked by

9   a police officer who stopped him for a traffic infraction, were

10  "frivolous" and failed to state a claim upon which relief might

11  be granted.  Ma'at-Ra v. Bateman, No. 2:03-cv-02508-R-AN, Report

12  & Recommendation at 4, 8, 15 (C.D. Cal. Nov. 10, 2005), ECF No.

13  103.  Review of the briefing in Ma'at-Ra makes clear that Ma'at-

14  Ra claimed, as does Plaintiff here, that he was not required to

15  have a driver's license as long as he was not using the public

16  highways "for profit or commercial purposes."  Appellant's or

17  Petitioner's Informal Brief ¶¶ 73, 75, Ma'at-Ra, 234 F. App'x 514

18  (No. 05-56921), 2006 WL 2982067.  The Ninth Circuit upheld the

19  Magistrate Judge's finding that the claim was frivolous.  The

20  California courts have rejected similar arguments.  See Olajide

21  v. Cal. Dep't of Motor Vehicles, No. A133375, 2012 WL 893879

22  (Cal. Ct. App. Mar. 16, 2012) (rejecting claim that Vehicle Code

23  applies only to those "driving for the State of California or for

24  any political subdivision thereof" or "for commercial purposes").

25       Plaintiff's Complaint suffers from other critical

26  deficiencies in addition to its fatally flawed underlying

27  premise.

28       He has not pleaded any facts to support a claim under

§ 1985(3).  (See Compl. ¶ 114.)  Section 1985(3) prohibits conspiracies to deprive "any person or class of persons" of equal protection under the laws, equal privileges and immunities under the laws, or the right to vote.  To state a claim under § 1985(3), a plaintiff must allege "(1) that some racial, or perhaps otherwise class-based, invidiously discriminatory animus lay behind the conspirators' action, and (2) that the conspiracy aimed at interfering with rights that are protected against private, as well as official, encroachment." Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 267-68, 113 S. Ct. 753, 758, 122 L. Ed. 2d 34 (1993) (citations, alteration, and internal quotation marks omitted).  "[T]he plaintiff must state specific facts to support the existence of the claimed conspiracy." Olsen v. Idaho State Bd. of Med., 363 F.3d 916, 929 (9th Cir. 2004) (internal quotation marks omitted).

To state a claim for conspiracy to violate his right to equal protection, Plaintiff must allege facts showing that he was intentionally treated differently from others similarly situated and that there was no rational basis for the difference in treatment.  See Vill. of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S. Ct. 1073, 1074, 145 L. Ed. 2d 1060 (2000); see also Barren v. Harrington, 152 F.3d 1193, 1194-95 (9th Cir. 1998). Conclusory allegations will not suffice.  See Karim-Panahi v. L.A. Police Dep't, 839 F.2d 621, 626 (9th Cir. 1988) (affirming dismissal of § 1985(3) claim containing "legal conclusions but no specification of any facts to support the claim of conspiracy"). Plaintiff alleges no facts whatsoever to satisfy any of the above requirements.

1    Plaintiff's Fifth Amendment claims (see Compl. ¶¶ 101-11)

2  fail because "[t]he Due Process Clause of the Fifth Amendment and

3  the equal protection component thereof apply only to actions of

4  the federal government – not to those of state or local

5  governments."  Lee v. City of L.A., 250 F.3d 668, 687 (9th Cir.

6  2001), overruled on other grounds as recognized by Galbraith v.

7  Cnty. of Santa Clara, 307 F.3d 1119, 1125-26 (9th Cir. 2002).

8  Plaintiff does not allege that any Defendant is a federal actor;

9  indeed, they plainly are not.

10    Plaintiff's Ninth Amendment claims (see Compl. ¶¶ 75-84)

11  fail because there is no fundamental constitutional right to

12  drive a motor vehicle, see Miller v. Reed, 176 F.3d 1202, 1205-06

13  (9th Cir. 1999), and in any event the Ninth Amendment does not

14  "independently secur[e] any constitutional rights for purposes of

15  making out a constitutional violation," Schowengerdt v. United

16  States, 944 F.2d 483, 490 (9th Cir. 1991); Preskar v. United

17  States, 248 F.R.D. 576, 586 (E.D. Cal. 2008) (recommending

18  dismissal of § 1983 claims predicated on Ninth Amendment),

19  accepted by 2008 WL 802925 (E.D. Cal. Mar. 24, 2008).

20    Finally, because Plaintiff's federal claims all must be

21  dismissed, his state-law tort claims (Compl. ¶¶ 90-95) must be

22  dismissed as well.  A court may exercise supplemental

23  jurisdiction over a state-law claim if a plaintiff raises a

24  cognizable federal claim that is substantial enough to confer

25  federal jurisdiction and shares a common nucleus of operative

26  fact with the state claim.  Brady v. Brown, 51 F.3d 810, 816 (9th

27  Cir. 1995); see 28 U.S.C. § 1367.  If the federal claim is

28  dismissed before trial, the state claim should be dismissed as

1  well.   United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726, 86

2  S. Ct. 1130, 1139, 16 L. Ed. 2d 218 (1966).   Here, because the

3  Court dismisses all of Plaintiff's federal claims for failure to

4  state a claim, his state-law tort claims must also be dismissed.

5      Because Plaintiff's Complaint is frivolous and its

6  deficiencies clearly cannot be cured by amendment, the Court

7  hereby ORDERS that the Complaint is dismissed with prejudice.

8

9  DATED: _____        _____

10                                        DAVID O. CARTER
                                          U.S. DISTRICT JUDGE

11

12

13

14  Presented by:

15  **JEAN ROSENBLUTH**

16  Jean Rosenbluth
    U.S. Magistrate Judge

17

18

19

20

21

22

23

24

25

26

27

28

**Form 6.     Certificate of Compliance With Type-Volume Limitation, Typeface Requirements, and Type Style Requirements**

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

☒ this brief contains 10903_____ words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

☐ this brief uses a monospaced typeface and contains_____ lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

☒ this brief has been prepared in a proportionally spaced typeface using *(state name and version of word processing program)* OpenOffice Version 3.3.0 *(state font size and name of type style)* 14-point minimum, Times New Roman_____ , *or*

☐ this brief has been prepared in a monospaced spaced typeface using *(state name and version of word processing program)* _____ with *(state number of characters per inch and name of type style)* _____ .

Signature │Philip C. Bikle     [signature]_____

Attorney for │_____

Date │Aug 25, 2014_____

# CERTIFICATE OF SERVICE

Case Name: <u>Philip Bikle v. A. Santos, et al</u>

9th Cir. Case No.: <u>14-55077</u>


I certify that 2 copies of the document: <u>"APPELLANT'S BRIEF"</u>

(title of document you are filing)

and any attachments was served, either in person or by mail, on the persons listed below.


| | |
|---|---|
| *signature* | 8/25/14 |
| Signature | Date Served |

Notary NOT required

<u>Name of party served</u>                    <u>Address</u>

Officer A. Santos                    Lakewood Station
                                     5130 Clark Avenue, Lakewood, CA 90712

1

1

## CERTIFICATE OF SERVICE

2

3    Case Name: <u>Philip Bikle v. A. Santos, et al</u>

4    9th Cir. Case No.: <u>14-55077</u>

5

6    I certify that 2 copies of the document: <u>"APPELLANT'S BRIEF"</u>

7                              (title of document you are filing)

8    and any attachments was served, either in person or by mail, on the persons listed below.

9

10

11    _____          8/25/14
                                                _____

12    Signature                                Date Served

      Notary NOT required
13
      <u>Name of party served</u>              <u>Address</u>
14    Officer Cathy Hayes                      Lakewood Station

15                                             5130 Clark Avenue, Lakewood, CA 90712

16

17

18

19

20

21

                                                                                    1

# CERTIFICATE OF SERVICE

Case Name: <u>Philip Bikle v. A. Santos, et al</u>

9th Cir. Case No.: <u>14-55077</u>

I certify that 2 copies of the document: <u>"APPELLANT'S BRIEF"</u>

(title of document you are filing)

and any attachments was served, either in person or by mail, on the persons listed below.

_____          8/25/14
Signature                                Date Served

Notary NOT required

<u>Name of party served</u>                    <u>Address</u>

Los Angeles County                       Kenneth Hahn Hall of Administration
                                         500 W. Temple St.
                                         Los Angeles, CA 90012

1

# CERTIFICATE OF SERVICE

Case Name: <u>Philip Bikle v. A. Santos, et al</u>

9th Cir. Case No.: <u>14-55077</u>

I certify that 2 copies of the document: <u>"APPELLANT'S BRIEF"</u>

(title of document you are filing)

and any attachments was served, either in person or by mail, on the persons listed below.

_____          _____

8/25/14

Signature                                                      Date Served

Notary NOT required

<u>Name of party served</u>                                       <u>Address</u>

City of Lakewood in Los Angeles County          5050 Clark Avenue

Lakewood, CA 90712

1

# CERTIFICATE OF SERVICE

Case Name: <u>Philip Bikle v. A. Santos, et al</u>

9th Cir. Case No.: <u>14-55077</u>

I certify that 2 copies of the document: <u>"APPELLANT'S BRIEF"</u>

(title of document you are filing)

and any attachments was served, either in person or by mail, on the persons listed below.

_____                    8/25/14

Signature                                           Date Served

Notary NOT required

<u>Name of party served</u>                          <u>Address</u>

Los Angeles Sheriff's Department                    John L. Scott, Sheriff
                                                    Los Angeles County Sheriff's Department
                                                    4700 Ramona Blvd.

                                                    Monterey Park, CA 91754